156 So. 447

## In re EMPLOYERS' LIABILITY ASSUR. CORPORATION, LIMITED, OF LONDON, ENGLAND.

### No. 32815.

July 2, 1934.

Rehearing Denied Aug. 3, 1934.

Caleb C. Weber, of Donaldsonville, and Porteous, Johnson & Humphrey, of New Orleans, for appellants Mr. and Mrs. John D. Sentilles.

Lazarus, Weil & Lazarus, of New Orleans, for appellant Touro Infirmary.

Arthur A. de la Houssaye, of New Orleans, for appellant Dr. William P. Bradburn.

Guion & Upton, of New Orleans, for other appellants.

Edward Rightor, of New Orleans, for appellee Employers' Liability Assur. Corp. of London, England.

George R. Blum, of Donaldsonville, for Mose F. Bloomensteil, trustee of Frey Bros.

O'NIELL, Chief Justice.

Miss Margaret Sentilles, seventeen years of age, was seriously injured by an automobile belonging to Frey Brothers and driven by an employee of the firm. Miss Sentilles' parents, John D. Sentilles and wife, sued Frey Brothers for damages, charging negligence on the part of the driver of the automobile, and claiming $40,000 for the use and benefit of their minor daughter, and $6,457.09 for themselves, for the surgical, medical, and hospital expenses incurred. The plaintiffs obtained a verdict and judgment for $30,000 for the use and benefit of Miss Sentilles, and for the $6,457.09 for themselves for the expenses incurred. Two days after the judgment was rendered and signed, Frey Brothers and the members of the firm, Louis M. Frey and Charley J. Frey, voluntarily filed a petition in bankruptcy, and were adjudged bankrupts.

Frey Brothers held a liability insurance policy, issued by the Employers' Liability Assurance Corporation, Limited, of London, England, on the automobile by which Miss Sentilles was injured; the corporation's liability being limited to $10,000 of legal liability for bodily injuries or death of one person, and limited to $20,000 of legal liability for bodily injuries or death of any number of persons in one accident.

After Frey Brothers had gone into bankruptcy, the insurance company brought this concursus proceeding, under the provisions of Act 123 of 1922, averring that several parties, namely, Mrs. Ernest D. Barton and Mrs. Lillie Pearl, claiming $2,028, L. A. Frey & Sons, Inc., claiming $361.50, and Touro Infirmary, claiming $805.85, had notified the insurance company that each of them was claiming an assignment from the Sentilles of a part of the insurance money. The insurance company therefore deposited in the registry of the court $10,000, plus $209.72 accrued interest, and prayed that John D. Sentilles and wife, individually and on behalf of their minor daughter, and Frey Brothers, Mrs. Barton and Mrs. Pearl and Touro Infirmary, should be cited to assert their claims upon the fund deposited in court, and, after due proceedings had, that the fund should be properly distributed, and the insurance company discharged from further liability in the premises.

Mrs. Barton and Mrs. Pearl, answering the petition, produced 23 promissory notes for the total sum of $2,028, signed by John D. Sentilles, made payable to the order of Frey Brothers and indorsed by the firm; and Mrs. Barton and Mrs. Pearl produced also a docu-

ment which they considered an assignment of so much of the insurance money as would pay the notes, the document being in the form of a letter, dated February 22, 1932, addressed to Frey Brothers, and signed by J. D. Sentilles, Mrs. J. D. Sentilles, and Margaret Sentilles, viz.:

"February 22, 1932.

"Frey Brothers, Donaldsonville, La.

"Gentlemen: This letter will be your authorization to have the Employers' Liability Assurance Corporation, of London, England (its general agent is now Mr. Herman Egloff, Hibernia Bank Building, New Orleans, La.), to insert your names in check or checks when same has or have been issued for settlement of damages, caused by automobile accident on or about January 16th, 1932, to Margaret Sentilles.

"The purpose of this letter: to have your names inserted in the check or checks is to protect you for amount of money or moneys which have been advanced or will be advanced by you to use for hospital and other expenses connected with said accident.

"The amount due you will be determined by the notes you now hold or will hold. Said note or notes being signed by J. D. Sentilles."

The letter was indorsed with this assignment on its back, viz.:

"We hereby endorse this instrument and transfer and assign all of the rights conferred upon us therein and thereby to the holder or holders of the notes signed by J. D. Sentilles and referred to therein.

"[Signed]     Frey Bros.

"By L. M. Frey.

Mrs. Barton and Mrs. Pearl averred that they had acquired the twenty-three promis-

sory notes, and the assignment, by inheritance from their father, Alex Bloomensteil, deceased, and that he had acquired them from Frey Brothers, for a valuable consideration, before maturity of the notes, and with the knowledge and consent of J. D. Sentilles and his wife and daughter, and that the proceeds of the notes were for the use and benefit of the daughter, Margaret Sentilles. Mrs. Barton and Mrs. Pearl averred that due notice of the assignment was given to the Employers' Liability Assurance Corporation, Limited, of London, England, and to J. D. Sentilles and his wife and daughter, and that they had actual knowledge thereof. Mrs. Barton and Mrs. Pearl, therefore, prayed for judgment against the Employers' Liability Assurance Corporation, Limited, of London, England, and against J. D. Sentilles and Miss Margaret Sentilles, for the amount of the 23 notes, $2,028, with interest at 8 per cent. per annum on each note from its date, as stipulated in the notes, and prayed for payment of the claim out of the insurance money deposited in court, and by preference over all other claimants.

L. A. Frey & Sons, Inc., did not set up a claim on the insurance money. It appears that Frey Brothers transferred to L. A. Frey & Sons, Inc., nine of the promissory notes signed by J. D. Sentilles, and referred to in the letter of February 22, 1932, amounting to $361.50, a few days before going into bankruptcy; but L. A. Frey & Sons, Inc., saw fit to return the notes by turning them over to Mose F. Bloomensteil, trustee of the bankrupt estate, and disclaimed ownership of the notes. Mose F. Bloomensteil, therefore, as trustee of the bankrupt estate of Frey Brothers, appeared in answer to the petition of the insurance company, and claimed the $361.50, represented by the nine promissory notes; the claim being similar to that of Mrs. Barton and Mrs. Pearl.

The Touro Infirmary, answering the petition of the insurance company, claimed that the balance of $805.85, after deducting the several payments made by or on behalf of the Sentilles, was due for the care and treatment of Miss Sentilles in the infirmary for a period extending over seven months from the date of the accident. The infirmary averred that J. D. Sentilles and his wife had promised verbally to pay the amount due to the infirmary out of any money that might be recovered from Frey Brothers, whose fault and negligence had caused the injuries to Miss Sentilles, which necessitated her removal to the infirmary and the treatment given to her there. The infirmary, therefore, prayed for payment of the $805.85 out of the insurance money on deposit in the registry of the court, by preference over all other claimants.

Dr. William P. Bradburn, the surgeon who successfully treated Miss Sentilles for her injuries, filed a petition of intervention in these proceedings, claiming $2,000 for his professional services, which extended over a period of ten months. He averred that J. D. Sentilles and his wife had promised verbally to pay him the $2,000 out of any money that might be recovered from Frey Brothers, whose fault and negligence had caused the injuries which required his professional services. He prayed, therefore, for payment of the $2,000 out of the insurance money on de-

posit in court, by preference over all other claimants. The claim of Dr. Bradburn is analogous to that of Touro Infirmary.

Dr. T. H. Hanson, who rendered professional services to Miss Sentilles immediately after the accident and for some time thereafter, filed a petition of intervention, claiming $200 for his professional services, and asking for payment out of the insurance money on deposit in the registry of the court; but his claim is not before us, because it was not ordered paid out of the fund in dispute, and Dr. Hanson has not appealed.

Judgment was rendered in favor of the Employers' Liability Assurance Corporation, declaring the fund deposited sufficient and discharging the corporation from further liability, and ordering the fund turned over to J. D. Sentilles, individually and for the use and benefit of his daughter. He, individually and for the use and benefit of his daughter, has appealed from the decision limiting the liability of the insurance company to $10,000; and Mrs. Barton and Mrs. Pearl, and Mose F. Bloomensteil, trustee, and Touro Infirmary and Dr. Bradburn have appealed from the decision refusing to pay their claims in preference to the Sentilles' out of the fund in dispute.

■ The appeal of J. D. Sentilles brings up his contention that the limit of liability of the insurance company is $20,000, because two persons suffered a loss in consequence of the accident; that is, because Miss Sentilles suffered a loss of $30,000, for which the Sentilles claim the insurance company is liable to the extent of $10,000, and J. D. Sentilles suffered a loss of $6,457.09, for which also he claims the insurance company is liable. In support of the argument, the attorneys for the Sentilles cite several decisions to the effect that the liability of the insurer, under a policy like that of the Employers' Liability Assurance Corporation, is not limited to the liability for the damages due to the party who has suffered the bodily injuries, but includes also the legal liability of the insured for any loss suffered by the parent or guardian, or husband, as the case may be, of the party injured, for medical, surgical, or other such expenses incurred because of the bodily injuries. The cases cited are Psota v. Long Island Railroad Co., 246 N. Y. 388, 159 N. E. 180, 62 A. L. R. 1163; Price v. National Surety Co., 246 N. Y. 586, 159 N. E. 662; Kula v. Jersey Mutual Casualty Insurance Co., 153 A. 265, 8 N. J. Misc. 929; Migatz v. Jersey Mutual Casualty Insurance Co., 107 N. J. Law, 343, 153 A. 594; Antichi v. New York Indemnity Co. (McIntyre v. New York Indemnity Co.), 126 Cal. App. 284, 14 P.(2d) 598; United States Fidelity & Guaranty Co. v. Baker, 24 Ala. App. 274, 134 So. 894, and Franklin v. Georgia Casualty Co., 225 Ala. 58, 141 So. 702.

The decisions cited went no further than to maintain that, by the language of the clauses defining the coverage, in the policies of insurance then under discussion, which clauses where substantially like the coverage clauses in the policy now under discussion, the insurance company was liable, not only for the damages inflicted by the bodily injuries to the person injured, but also for the damages suffered in consequence thereof, even by the parent or guardian, or husband, of the person who was bodily injured, for expenses incurred for medical or surgical treatment of the bodily

injuries. But the financial limit of the liability of the insurer, for the legal liability of the party insured, was not discussed or considered in any of the cases cited. It appears that, in Williams v. Nelson, in 1917, 228 Mass. 191, 117 N. E. 189, Ann. Cas. 1918D, 538, and again in Brustein v. New Amsterdam Casualty Co., in January, 1931, 255 N. Y. 137, 174 N. E. 304, it was held that a liability policy covering automobile accidents resulting in bodily injuries or death did not cover losses or expenses incurred by the injured woman's husband, in consequence of the injuries. Because of the ruling of the New York Court of Appeals in the Brustein Case, the superintendent of insurance of the state of New York sent out a circular to the insurance companies writing liability policies on automobiles, instructing the companies to use such language in their policies as to leave no doubt that they covered consequential damages, such as medical and hospital bills incurred, even by the husband or guardian of the person suffering the "bodily injuries." The result of those instructions is that all standard liability policies of insurance on automobiles, such as the policy now under discussion, are so worded as to cover all legal liability, including liability for consequential damages, such as for medical or hospital bills incurred by the parent or guardian or husband of the one who suffered the bodily injuries. But that has nothing to do with the financial limits of the insurer's liability, stated in the policy, such as $10,000 of liability for damages resulting from bodily injuries or death of one person, or $20,000 of liability for damages resulting from one accident causing bodily injuries or death to more than one person. The attorneys for the Sentilles argue that the language of the policy in this case may and should be interpreted to mean that the limit of the insurer's liability is not $10,000, but $20,000, where more than one person has suffered a loss, for which each has a cause of action for damages, resulting from bodily injuries to only one person. But the language of the policy leaves no doubt that the limit on the insurer's liability is $10,000 if only one person suffers bodily injuries or death, no matter how many persons may suffer a loss, for which each one of them may have a cause of action for damages, resulting from the bodily injuries or death of the one person. The limit of $20,000 on the insurer's liability, for bodily injuries or death resulting from one accident, applies only where the accident causes "bodily injuries or death to more than one person." The pertinent paragraph in the policy, under the head of "Agreements," is this: "The Corporation's liability as respects injuries resulting from bodily injuries or death of one person shall in no event exceed the limit expressed for one person in Item 5 (a) of the Declarations and subject to such amount for injuries resulting from the bodily injuries or death of one person, the total liability on account of any one accident causing bodily injuries or death to more than one person shall not exceed the limit expressed for one accident in said Item 5 (a) of the Declarations."

Item 5 (a) of the declarations is simply this: "Legal Liability for Bodily Injuries or Death Limit, One Person Ten thousand dollars ($10,000) Limit, One Accident Twenty thousand dollars ($20,000)."

Substituting the word "damages" for "injuries," in the expression "as respects injuries," the language of the policy is paraphrased thus: The corporation's liability as respects damages resulting from bodily injuries or death of one person shall in no event exceed $10,000; and, subject to that limitation for damages resulting from the bodily injuries or death of one person, the total liability on account of any one accident causing bodily injuries or death to more than one person shall not exceed $20,000. In other words, it is only in the case of "one accident causing bodily injuries or death to more than one person" that the limit of the insurer's liability is increased from $10,000 to $20,000. It is not in the event that more than one person suffers damages, but it is in the event that more than one person suffers "bodily injuries or death," that the limit of the insurer's liability is increased twofold, "on account of any one accident causing bodily injuries or death to more than one person." The language of the policy leaves no doubt about that. The judgment appealed from, therefore, is correct in discharging the Employers' Liability Assurance Corporation from further liability beyond the $10,000 and interest, which the corporation has deposited in court.

The appeal taken by Mrs. Barton and Mrs. Pearl, like the appeal of Mose F. Bloomensteil, as trustee of the bankrupt estate of Frey Brothers, brings up the contention of these appellants that the letter which the Sentilles gave to Frey Brothers, dated February 22, 1932, authorizing the insurance company to insert the name of Frey Brothers in any check or checks that might be issued in settlement of the Sentilles'

claim for damages resulting from the automobile accident, was an assignment of the insurance money to the extent of the promissory notes given or to be given by J. D. Sentilles to represent the amount that was or would be advanced by Frey Brothers for hospital and other such expenses caused by the accident. Of course, if there was no assignment of a part of the insurance money, which is now on deposit in court, the judge had no authority to pay the money to any one but J. D. Sentilles, individually and for the use and benefit of Miss Sentilles. Act No. 123 of 1922, which governs this concursus proceeding, does not authorize the judge to pay any part of a fund deposited under authority of the statute to any ordinary creditor of the party entitled to the fund or to any part of it. The judge's authority in that respect is merely to pay or distribute the fund to the person or persons owning it or having a lien upon it. The claim of Mrs. Barton and Mrs. Pearl is no better than the claim of the trustee of the bankrupt estate of Frey Brothers, as far as the fund in court is concerned, because Frey Brothers could not convey—and the language of their assignment to the father of Mrs. Barton and Mrs. Pearl did not purport to convey—any greater right than Frey Brothers had to the insurance money. It may be that the transfer by Frey Brothers of the promissory notes signed by J. D. Sentilles gave the father of Mrs. Barton and Mrs. Pearl a better claim against J. D. Sentilles than Frey Brothers would have had if they had retained the notes; that is, if the father of Mrs. Barton and Mrs. Pearl acquired the notes in due course and without knowledge of any collateral agreement between Sentilles and Frey

Brothers. But the letter dated February 22, 1932, signed by the Sentilles, authorizing the insurance company to insert the name of Frey Brothers in any check that the insurance company might issue in payment for the damages caused by the fault or negligence attributable to Frey Brothers, was not a negotiable instrument. The purpose of the letter, as explained in it, was to protect Frey Brothers against the making of a settlement by and between the Sentilles and the insurance company. The letter itself, with the testimony introduced on the trial of this case, shows that Frey Brothers were merely making partial payments on a claim for damages, which, if well founded, was primarily a debt of Frey Brothers. If Frey Brothers had kept the promissory notes given by J. D. Sentilles and he had lost his suit against Frey Brothers, he would have owed Frey Brothers the amount of the notes; or, if the Sentilles had collected from the insurance company all that Frey Brothers owed the Sentilles in the way of damages, J. D. Sentilles would have owed Frey Brothers the amount of the notes. But it was never intended that J. D. Sentilles should owe Frey Brothers the money which they "advanced * * * to use for hospital and other expenses connected with said accident," if Frey Brothers should be condemned to pay all of the expenses and damages resulting from the accident, and should leave unpaid a large balance due to the Sentilles, exceeding the amount of the notes which Sentilles gave for the money advanced by Frey Brothers. We must bear in mind that the money advanced by Frey Brothers, for which J. D. Sentilles gave his notes, was advanced in part payment of a debt which Frey Brothers owed to the Sentilles.

It is argued on behalf of the trustee of the bankrupt estate of Frey Brothers that the debt which Sentilles owed to Frey Brothers for the money advanced by them to Sentilles could not be set off, or extinguished by compensation, by the judgment which Sentilles obtained against Frey Brothers, because, according to article 2209 of the Civil Code, compensation does not take place unless the two debts "are equally liquidated and demandable." It is argued that payment of the judgment of $36,457.09, rendered against Frey Brothers, was not "demandable" when Frey Brothers went into bankruptcy, because they filed their petition in bankruptcy on the second day after the judgment was rendered, at which time they had yet the right to a suspensive appeal from the judgment, and perhaps the right to apply for a new trial. They cite article 2215 of the Civil Code, to the effect that compensation cannot take place to the prejudice of rights acquired by a third party; and, hence, they cite the decision in People's Bank in Liquidation v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 So. 179, in support of the proposition that if, when both debts become due and exigible, one of the debtors has become bankrupt, compensation cannot take place because it would be to the detriment of the other creditors of the bankrupt. There is no occasion now to express an opinion as to the soundness of that doctrine, because, assuming that the doctrine is sound when applied to an appropriate state of facts, it is not applicable to the facts of this case, except perhaps as to the personal obliga-

tion of J. D. Sentilles, represented by his promissory notes; which is a matter foreign to the issues in this case. It is sufficient to say that the right which Frey Brothers acquired by the letter dated February 22, 1932, was merely to reimburse themselves for the money which they advanced to J. D. Sentilles if the insurance money should be enough to pay all of the damages due to the Sentilles on account of the automobile accident; but that right or prospect, of Frey Brothers, to reimbursement, vanished when the judgment was rendered against them for an amount far in excess of the limit of liability of the insurance company. And, after the judgment was rendered, Frey Brothers abandoned all right to contest it, by including it in their schedule of debts which they petitioned the bankrupt court to discharge them from. There is, therefore, no justice in the demand of the trustee of the bankrupt estate of Frey Brothers to take a part of this insurance money, the amount of which is much less than the debt which Frey Brothers owes to the Sentilles.

Adverting again to the claim of Mrs. Barton and Mrs. Pearl, we note that article 2212 of the Civil Code declares, in substance, that, if a creditor transfers his claim to a third party, and the debtor accepts the transfer unconditionally, he cannot thereafter set up in compensation against the third party a claim which, before the acceptance, he might have set up in compensation against the claim in the hands of the original creditor. But in this case there is neither allegation nor proof that the Sentilles "accepted" the alleged transfer or assignment by Frey Brothers to the father of Mrs. Barton and Mrs. Pearl. It was alleged by Mrs. Barton and Mrs. Pearl that the Sentilles were notified and had actual knowledge of the alleged transfer or assignment by Frey Brothers to the father of Mrs. Barton and Mrs. Pearl; but there is neither allegation nor proof as to when the alleged notification was given. Five of the promissory notes held by Mrs. Barton and Mrs. Pearl, amounting to $761.50, antedate the letter of February 22, 1932, and all of the other notes held by them, and all of the notes retained by Frey Brothers are dated subsequent to the letter of February 22, 1932. The second paragraph of article 2212 of the Civil Code declares that a notification given by a creditor to his debtor that he, the creditor, has transferred his claim to a third party "hinders only the compensation of credits posterior to that notification." The obligation of Frey Brothers to pay damages to the Sentilles arose when the accident happened. All of this discussion, however, is a matter of little or no importance when we consider that the purport and effect of the letter of February 22, 1932, was merely to protect Frey Brothers against paying to the Sentilles more damages than Frey Brothers were liable for.

As to the claim of Touro Infirmary and the claim of Dr. Bradburn, it is sufficient to say that neither of them has an assignment of part of the insurance money, or a lien on the fund. The demands of these claimants to be paid out of the fund in court are supported by considerations of equity, because the amount of the claims was a part of the $6,457.09 of expenses for which J. D. Sentilles obtained a judgment against Frey Brothers. But in the law of Louisiana there is no lien other than the liens created by statute. We express no opinion as to what claim Touro

Infirmary or Dr. Bradburn has against J. D. Sentilles or Miss Sentilles, because J. D. Sentilles, in his testimony in this case, seemed to contend that Frey Brothers alone were responsible for removing Miss Sentilles to the hospital and employing the services of Dr. Bradburn. That is a matter to be determined in a suit against the Sentilles.

The judgment is affirmed.