184 La. 1054

**LOWERY v. ZORN (MARYLAND CASUALTY CO., Garnishee).**

No. 33632.

Supreme Court of Louisiana.

March 30, 1936.

Rehearing Denied April 27, 1936.

E. W. & P. N. Browne, of Shreveport, for appellant.

Harry V. Booth and H. B. Lingle, both of Shreveport, for appellee.

O'NIELL, Chief Justice.

Christopher C. Lowery obtained a judgment against J. J. Zorn, in the district court in Bossier parish, for damages for personal injuries suffered by Lowery and his minor son, Julius Lowery, in an automobile accident. Lowery and his son were riding in the cab of a motortruck which collided with an automobile driven by one W. C. Talley. The truck was owned by Zorn, a resident of Hacada, Ala., and was being driven by his employee at the time of the accident. The district judge found that the accident was caused by negligence on the part of the driver of Zorn's truck. Christopher C. Lowery was allowed $5,858.25 for his injuries and $150 for the use and benefit of his son. On appeal to the Court of Appeal for the Second Circuit, the judgment in favor of Christopher C. Lowery for his own use and benefit was increased to $8,358.25, and the judgment of $150 for the use and benefit of his son was affirmed. See Lowery v. Zorn et al., 157 So. 826.

Thereafter, Lowery obtained a writ of fi. fa. and brought this garnishment proceeding against the Maryland Casualty Company, on a policy of insurance, insuring Zorn against loss from liability imposed upon him by law for damages on account of bodily injuries accidentally suffered by any person, caused by or through the ownership, maintenance or operation of the truck. The court gave judgment against the garnishee for the full amount of the judgment; that is, for the $8,358.25 damages suffered by Christopher C. Lowery and for the $150 damages suffered by his son, and for the court costs, amounting to $323.70, incurred in the district court in Bossier parish. The garnishee has appealed.

The garnishee, as insurer, is not liable for more than $5,000 for the damages suffered by Christopher C. Lowery, because the limit of liability as fixed in the policy is $5,000 for bodily injuries to one person and "subject to the same limit for each person" $10,000 for any one accident causing bodily injury to more than one person. Such limitations mean that, if two or more persons have suffered bodily injuries in one accident, and if the amount of damages suffered by one of the persons injured exceeds the limit of liability for injuries to one person, he cannot recover from the insurer more than the limit of liability for injuries to one person, even though the total amount of damages due to all of the injured persons is less than the limit of liability for one accident. Stated another way, the limit of liability for bodily injuries to more than one person in any one accident is subject to the further limit of liability for each one of the persons injured. In re Employers' Liability Assurance Corporation, 180 La. 406, 156 So. 447. Accordingly, the extent of the liability of the insurer in this case is $5,150; that is, $5,000 for the bodily injuries suffered by Christopher C. Lowery and $150 for the bodily injuries suffered by his son. But, if the insurer is liable for the $5,150 damages, the insurer is liable also for the interest accruing thereon from the date of entry of the judgment against Zorn, and for all court costs which Zorn was condemned to pay and which the insurer has not paid; because the insurance policy, in Insuring Agreement III, provides that the insurer is liable for such interest and court costs, "irrespective of the limit of liability provided for in Insuring Agreement I"— that is to say, irrespective of the limit of $5,000 for bodily injuries suffered by one person and the limit of $10,000 for bodily injuries suffered by more than one person in any one accident.

The question, whether the garnishee in this case is liable as insurer, depends entirely upon the question whether Christopher C. Lowery and his son were passengers for hire or were having a free ride on the truck, with the permission of its owner, at the time of the accident. One of the "Insuring Agreements," V (f), in the policy, is that it does not cover accidents occurring while the truck is being used for the carrying of passengers for a consideration. The reason why there is a dispute as to whether Christopher C. Lowery and

his son were being carried as "passengers for a consideration" or free of charge, at the time of the accident, is that the truck was engaged in transporting Lowery's household furniture and effects, from a farm near Hacada, Ala., to a farm near Mansfield, La., for a stipulated charge of $75. And the question in dispute is whether the permission given by Zorn to Lowery, for him and his son to ride in the cab of the truck, was given as a part of the contract for the carrying of the furniture and household effects, or was given after the contract was entered into, and without any charge or consideration therefor.

The garnishee in this case depended upon an exception of no cause or right of action and a plea of estoppel, and Lowery depended upon a plea of res judicata and a counter plea of estoppel. The judge overruled the garnishee's exception of no cause or right of action and plea of estoppel, and sustained Lowery's plea of estoppel and plea of res judicata.

■ The garnishee's exception of no cause or right of action is founded upon two distinct propositions. The first proposition is that, when a garnishee shows that there is a serious dispute between him and the judgment debtor, as to whether the garnishee is indebted to the judgment debtor, the dispute must be settled, either amicably or by litigation between the judgment debtor and the garnishee, before the judgment creditor can proceed against the garnishee. Two decisions are cited to support this proposition, namely, Katz & Barnett v. Sorsby (London, Liverpool & Globe Insurance Company, Garnishee), 34 La. Ann. 588, and Liminet v. Fourchy (Dumas, Garnishee), 51 La.Ann. 1299, 26 So. 87, 88. But these cases are not in point. In Katz & Barnett v. Sorsby, the garnishee, insurance company, merely declined to admit or deny liability, because the alleged loss by fire, against which the garnishee had insured Sorsby, had not been adjusted at the time when the garnishee answered the interrogatories. In that case there was no clear-cut issue tendered, on which the court might decide whether the garnishee owed the defendant, Sorsby. In this case the issue is clearly presented. In Liminet v. Fourchy, the court expressed a belief that Fourchy was suing the garnishee indirectly in the name of Liminet, and was seeking thus to establish the alleged indebtedness by his own testimony as a witness for Liminet. There is no suggestion of any such motive in this case. Besides, in Liminet v. Fourchy the court referred to the alleged indebtedness of the garnishee to Fourchy as a matter involving "complicated accounts and protracted and multifarious transactions * * * to be examined." There is no such complication or difficulty in this case. The question is squarely presented by the rule which Lowery obtained to traverse the answers to the interrogatories propounded to the garnishee, and by the garnishee's exceptions and answer to the rule, whether Lowery and his son were passengers for hire, or were riding on the truck free of charge, with the consent of the owner, Zorn; and that is the only question on which depends the garnishee's liability to Zorn. That question can be determined as well in this garnishment proceeding as it could be in a direct action against the insurer, by the party having a judgment against the insured.

■ The other contention made by the garnishee in the exception of no cause or right of action is that the policy of insurance is merely an indemnity policy, insuring Zorn only against *loss* from liability imposed by law, etc., and hence that the insurance is not payable until Zorn has actually sustained the loss by paying the liability, or unless Zorn has become insolvent or gone into bankruptcy. If that is the correct interpretation of the policy, the injured party, Lowery, could never have a right of action on the policy, except in case of insolvency or bankruptcy of the insured, because, if he should pay his indebtedness to Lowery, that would end the matter as far as Lowery is concerned. Our interpretation of the policy, however, is that the right to bring suit on the policy arose as soon as the amount of the claim against the insured was fixed by the final judgment rendered against the insured. In clauses A and B of the "Insuring Agreements," it is declared that the insurance is "Against loss from liability," etc. Hence it is argued that the insurance, against *loss* from liability, is not insurance against the liability itself. But the declaration that the insurance is against loss from liability is subject to explanation as to when the loss from liability is deemed to be sustained. And the explanation is found in the clauses which refer directly and specifically to that subject. These clauses are in Insuring Agreement IV and in Condition C. Insuring Agreement IV and Condition C are as follows:

"IV. The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries or death sustained or loss occasioned within the provisions of this Policy; and the prepayment of any judgment that may be recovered against the Assured upon any claim covered by this Policy is not a condition precedent to any right of action against the Company upon this Policy but the company is bound to the extent of its liability under this Policy to pay and satisfy such judgment; and an action may be maintained upon such judgment by the injured person, or his or her heirs or personal representatives, as the case may be, to enforce the liability of the Company as in this Policy set forth and limited."

"C. No action shall lie against the Company to recover upon any claim or for any loss under Insuring Agreement IV unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the Assured after trial of the issue or by agreement between the parties with the written consent of the Company, nor in any event unless brought within two years after such final judgment or agreement."

The argument advanced by the insurance company, with regard to the clauses which we have quoted, is that the first clause in Insuring Agreement IV, "The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries or death sustained or loss occasioned within the provisions of this Policy;" is the controlling clause, and that all that follows is dependent upon the insolvency or bankruptcy of the assured. Our opinion, however, is that the clauses which follow the insolvency or bankruptcy clause, which we have quoted, are independent of and in addition to the insolvency or bankruptcy clause. There would have been no reason or necessity for the additional clauses, after the insolvency or bankruptcy clause, ending with the semicolon, if the additional clauses were dependent upon the insolvency or bankruptcy of the assured. Besides, if the insurance company had so intended, it would have been stated in the policy, thus, for example: "and in case of the insolvency or bankruptcy of the assured, the prepayment of any judgment that may be rendered against the assured upon any claim covered by this policy is not a condition precedent to any right of action against the company," etc. Our understanding, therefore, of Insuring Agreement IV, is that, even though the assured may not be insolvent or bankrupt, his prepayment of the judgment that has been rendered against him upon the claim of the injured person is not a condition precedent to a right of action against the insurance company upon the policy, but the company is bound to the extent of its liability under the policy to pay and satisfy the judgment, and an action may be maintained upon the judgment, by the injured person, to enforce the liability of the company. That interpretation of Insuring Agreement IV is confirmed by Condition C, which provides that no action shall lie against the insurance company to recover upon any claim or for any loss under Insuring Agreement IV unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the assured after trial of the issue or by agreement between the parties with the written consent of the company. By necessary implication, an action will lie against the insurance company to recover upon a claim under Insuring Agreement IV after, or when, the amount of the claim shall have been fixed and rendered certain by a final judgment against the assured. Nothing is said in Condition C about the insolvency or bankruptcy of the assured. To say, as is said in Insuring Agreement IV, that the prepayment of any judgment that may be recovered against the assured is not a condition precedent to a right of action against the company upon the policy, is the same as to say that the person in whose favor the judgment is rendered against the assured shall have a right of action against the insurance company upon the policy if the assured does not pay the judgment, because, if the assured pays the judgment, he alone has a right of action against the insurance company upon the policy. We assume, of course, that when the insurance company pays a judgment rendered against the assured, in a case like this, the company obtains a release from both the assured and the person having the judgment against the assured.

Our conclusion on this subject is that the garnishee's exception of no cause or right of action is not well founded.

■ The garnishee's plea of estoppel is founded upon the fact that, in the original suit of Lowery v. Zorn et al., in which

Lowery obtained the judgment against Zorn, Lowery alleged in his original petition that he and his two minor sons, Julius and Quinton Lowery, were passengers for hire on Zorn's truck at the time of the accident. In his original petition Lowery asked for damages for the use and benefit of both of his sons. The suit was brought against both the Maryland Casualty Company, as insurer, and Zorn, the insured. The Maryland Casualty Company filed an exception to the jurisdiction of the district court in Bossier parish, where the accident had occurred, and an exception of misjoinder. The exceptions were sustained and the suit was dismissed as far as the Maryland Casualty Company was concerned, because the policy of insurance was written and delivered in Alabama, where there is no statute, such as Act No. 55 of 1930, allowing a person who is injured by an automobile covered by liability insurance to sue the insurer without first obtaining a judgment against the assured. When the insurance policy was produced, in the district court in Bossier parish, the attorneys for Lowery observed that the policy did not cover loss or liability for injuries to a passenger for hire. The attorneys for Lowery, therefore, made a further investigation into the arrangement under which Lowery was permitted to ride on the truck; and thereafter the attorneys attempted to amend their petition, by alleging that the consideration, $75, paid by Lowery to Zorn, was paid only for the transportation of Lowery's household furniture and effects, and that, after the contract was entered into between Lowery and Zorn, for the transportation of Lowery's household furniture and effects, Lowery and his son Julius were permitted by Zorn to ride on the truck, free of charge. The proposed amendment of Lowery's petition was objected to by the attorneys representing both the insurance company and Zorn, the objection being made in the name of Zorn. The objection was sustained and the amendment disallowed. Up to that stage of the litigation, the attorneys for the insurance company were representing also Zorn, the company having undertaken to defend the suit for Zorn under a nonwaiver agreement; it became obvious, however, to the attorneys for the insurance company, that there was a conflict of interest between the company and Zorn. It was to the interest of the company that Lowery should be held to his allegation that he and his son Julius were passengers for hire at the time of the accident, because, if the allegation was true, the company was released from liability; and it was contrary to the interest of Zorn to have Lowery adhere to his allegation that he and his son were passengers for hire at the time of the accident, because, if the allegation was true, the fact not only caused a forfeiture of Zorn's insurance but it increased his responsibility for the safety of Lowery and his son to that of a carrier of passengers for hire. On the suggestion of the attorneys for the insurance company, therefore, another attorney was employed to represent Zorn. The company paid Zorn's attorney's retainer fee, as the company felt obliged to do under its obligation to defend the suit for Zorn. And, as Lowery appealed from the judgment sustaining the company's plea to the jurisdiction of the court and exception of misjoinder, the attorneys for the company continued in their defense of the suit for the company. The attorney employed to represent Zorn filed an answer for him, and alleged that Lowery and his son were not passengers for hire, on the truck, and had not paid or made any arrangement to pay fare or compensation of any kind for the privilege of riding on the truck. Zorn's defense was that Lowery and his son rode on the truck without his (Zorn's) consent or knowledge, and that they were therefore trespassers. Zorn's plea, in effect, waived the objection which he had made to the amendment of Lowery's original petition. Thenceforth, the only question at issue between Lowery and Zorn was whether Lowery and his son had permission to ride on the truck or were trespassers. The Court of Appeal declared in its opinion that Zorn's answer to the suit had caused to be eliminated the question whether Lowery should have been allowed to amend his original petition by alleging that he and his son were not passengers for hire at the time of the accident. Hence it cannot be pleaded successfully now that Lowery is estopped, by the allegations made in his original petition, to deny that he and his son were passengers for hire, or for a consideration. Lowery's allegation that he and his son were passengers for hire must be considered only as a matter of evidence to that effect, which had to be explained, and which in fact was explained. When the petition was drawn Lowery was yet confined to his bed, physically unable to go to the attorney's office, and with his mental faculties impaired. The facts of

the case were given to the attorneys by a nephew of Lowery, who made the mistake of saying, not only that the $75 paid by Lowery to Zorn included the fare of Lowery and his son Julius, but also that it included the fare of the other son, Quinton Lowery, who, as a matter of fact, was not on the truck at all, until it arrived at Bossier City, near its destination. He boarded the truck there only a few minutes before the accident happened. The Court of Appeal, having affirmed the ruling dismissing the suit against the insurance company, found it unnecessary to decide whether Lowery and his son had paid for the privilege of riding on the truck at the time of the accident. The only question before the Court of Appeal, in that respect, was whether Lowery and his son had Zorn's permission to ride on the truck; and the court decided that Lowery and his son did have Zorn's permission to ride on the truck.

For the reasons which we have given we affirm the ruling that the garnishee's plea of estoppel is not well founded. The so-called counter plea of estoppel, filed by Lowery, was founded upon Zorn's answer to the original suit, in which he admitted that Lowery and his son had not paid or agreed to pay any consideration for the privilege of riding on the truck. It is argued that Zorn's admission was binding upon the insurance company because the company defended the suit for Zorn. All of which has become a matter of no importance, by our finding that there is no merit in the garnishee's plea of estoppel.

We do not consider Lowery's plea of res judicata well founded, because, as we have said, the Court of Appeal did not decide, one way or the other, whether Lowery and his son were passengers for hire at the time of the accident. It was not necessary for the judge, in this garnishment proceeding, to pass upon Lowery's plea of res judicata, because the judgment was based finally upon the evidence that Lowery and his son were not passengers for hire at the time of the accident. It was agreed between counsel for Lowery and counsel for the garnishee, in this case, that the whole record in the original suit of Lowery v. Zorn et al., in the district court for Bossier parish, should be brought up as a part of the record or transcript in this case; and the evidence introduced in that case, as in this garnishment proceeding, convinces us that Lowery and his son were not passengers for hire, but were traveling free of charge, at the time of the accident.

Decree.

The judgment appealed from is amended so as to reduce the amount of the judgment against the garnishee in favor of Christopher C. Lowery for his own use and benefit, from $8,358.25 to $5,000, and by computing the interest from the date on which the judgment was entered against Zorn, instead of the date of judicial demand. As thus amended the judgment is affirmed. It is accordingly ordered, adjudged, and decreed that Christopher C. Lowery recover of and from the garnishee, Maryland Casualty Company, $5,000 for his own use and benefit and $150 for the use and benefit of his minor son Julius Lowery, with interest on the $5,150 at the rate of 5 per cent. per annum from the 30th day of June, 1934, and the sum of $323.70 costs incurred in the original suit of Lowery v. Zorn et al., and the costs of this garnishment proceeding.