77 So.2d 757 (1955)
Robert E. FETTERLY and Virginia Flannery Fetterly
v.
Ross B. McNEELY et al.
No. 3942.
Court of Appeal of Louisiana, First Circuit.
January 28, 1955.
King, Anderson & Swift, Thos. L. Raggio, Lake Charles, for appellants.
Wood & Jackson, Jack L. Simms, Leesville, for appellees.
ELLIS, Judge.
This is a suit arising out of an automobile accident which occurred on State Highway No. 17 in the Parish of Calcasieu, between the towns of DeQuincy and Starks, Louisiana.
The plaintiffs are Robert E. Fetterly and his wife, Virginia Flannery Fetterly, who were guest passengers in a vehicle owned by Ross B. McNeely, one of the defendants, and the other defendant is Traders & General Insurance Company, liability insurer of McNeely, who was driving at the time of the accident.
The petition alleges that McNeely lost control of his vehicle, which turned over, injuring the plaintiffs, who plead the doctrine of "res ipsa loquitur", and in the alternative, the sole negligence of McNeely. The defendants denied any negligence, contending the accident was unavoidable.
Mrs. Fetterly seeks damages for alleged personal injuries in the amount of $5,000, and her husband claims $1,568.25.
The District Court, with written reasons, rendered judgment in favor of Robert E. Fetterly, against Ross B. McNeely and Traders & General Insurance Co., jointly and insolido, in the amount of $50, and in favor of Fetterly and against McNeely, individually, in the sum of $847.14, with legal interest on both amounts from December *758 5, 1953, until paid; judgment in favor of Virginia Flannery Fetterly and against McNeely and his insurer, jointly and insolido, in the full sum of $5,000 with legal interest thereon from December 5, 1953, until paid.
The defendants have appealed and plaintiffs have answered, seeking the judgment be increased to the amounts prayed for.
This accident occurred while both plaintiffs, husband and wife, were riding on the back seat of an automobile as the invited guests of McNeely, the driver and owner of the car. On the front seat was McNeely's wife. The small child of the plaintiffs was also on the back seat between its father and mother, but this infant received no injuries.
Although the accident occurred while no rain was falling, it had been raining shortly previous. The time was fixed at about 6:00 to 6:30 P.M., and the date was October 25, 1953. It was, therefore, dusk or early dark. The speed of the automobile, according to all of the witnesses, was not excessive, and was being driven cautiously. No other vehicle was directly involved, but there were three others approaching from the opposite direction at a distance of one-fourth to one-half mile. McNeely signalled for these cars to dim their lights and two of the oncoming drivers dimmed theirs but the third did not. There is no evidence that the failure of the driver of this car to dim its lights contributed in any manner to the accident, and none of the witnesses offered a positive opinion as to its cause. The two ladies in the car stated they had no idea of what caused the vehicle to head across the highway and turn over. The driver, McNeely, stated he thought the rear wheel slipped off of the hard surface of the highway on to the shoulder, and that he instinctively pulled the steering wheel sharply to the left. He did not remember whether he touched the accelerator or applied his brakes. Lt. Fetterly thought he felt the right front wheel go off the hard surfaced portion of the highway on to the shoulder, but he did not know the car swerved sharply to its left, skidding so it faced the opposite direction from which it was traveling, and turned over on the left side of the highway.
The statements contained in the last paragraph, although not direct quotations, are conclusions of the trial Court found in the written reasons for judgment, and are correct.
Our learned brother below expressed his opinion of the accident, and its causes, in the language following:
"Based on some forty years of experience driving cars, its observation of other drivers and the facts adduced, the Court is of the opinion that, although none of the participants actually know what actually caused the wreck, it was caused and happened in this way:
"When it is dark, it is difficult for a driver to see exactly where the edge of the pavement and the shoulder or adjoining dirt or gravel join and especially is this true of a black-top road when both are wet and the lights of approaching cars are glistening on the wet slab, sometimes causing the right wheels to be run off the hard surface and onto the shoulder. The Court believes that this is what happened in the instant case. The right wheels of the car were unintentionally and negligently driven off the edge of the `blacktop' slab onto the soft wet shoulder of the road. As will oftentimes happen, the driver, Mr. McNeely, feeling the wheel go off the pavement and the car thus be made to swerve to the right, instinctively pulled the steering wheel sharply to the left, and applied extra gas in order to reclimb the edge of the pavement. When the front wheel did reclimb the edge of the pavement, the steering wheel being turned acutely to the left, caused the car to cut sharply across the road, to the left. Again, instinctively, the driver turned the wheel too rapidly and too acutely to the right, trying to straighten out the car's direction, causing it to `skid' on the wet pavement, the rear going acutely to the right, thus turning the *759 car toward the direction from which it had been coming, the too sudden changes of direction causing it to overturn. According to the Court's version of the way the accident happened, based on the facts and circumstances appearing in the evidence, the driver of the car was guilty of these acts of negligence:
"(1) Not keeping control of the car so as to prevent the right front wheel running off the slab (2) too suddenly and too sharply turning the steering wheel to the left without reducing the car's speed, (3) a too rapid turning of the wheel to the right after the car reclimbed the edge of the slab, (4) application of the brakes of the car while it was in a `skid'. In other words, doing everything that ordinary care in driving would have dictated be not done and especially on a wet pavement."
Counsel for appellees contends "res ipsa loquitur" applies here, and the lower Court based his judgment upon this doctrine.
The concept of this doctrine in Louisiana, found in the written reasons for judgment, is stated in 12 Tulane Law Review, page 125:
"The common law generally applies the doctrine whenever injury has been caused by an instrumentality (a) which was under the control of the defendant, and (b) which does not ordinarily cause injury unless it is negligently used. This is Louisiana's position also, for the Supreme Court recently said in the case of Bruchis v. Victory Oil Co., 179 La. 242, 153 So. 828, `more precisely the doctrine of res ipsa loquitur asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed evidence to support recovery.'"
Our Supreme Court, in Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11, 13, stated:
"The doctrine of res ipsa loquitur is based upon the legal proposition that where the defendant is shown to be in a better position to explain the accident than the plaintiff, and where the circumstances of its occurrence indicate that plaintiff cannot be expected to have any information as to the causes of the accident, which is of a kind that does not occur ordinarily when due care has been exercised, `the rule of evidence is that the accident speaks for itselfres ipsa loquiturthat is to say, that a presumption of negligence arises from the fact itself of the accident'."
Also see Hamburger v. Katz, 10 La.App. 215, 120 So. 391, 392; Lawson v. Nossek, 15 La.App. 207, 130 So. 669.
In Gomer v. Anding, La.App., 146 So. 704, 707, this Court, with Judge Le Blanc as the organ of the Court, stated:
"It is a phrase used to express tersely a rule in the law of negligence to the effect that, where the fact of an accident exists and the attending circumstances are of themselves sufficient to justify an implication or inference of fault or negligence on the part of the defendant, making out a prima facie case as it were, the task then devolves upon the defendant to present an explanation to exculpate himself from the legal presumption that is thrown around him. It is not a shifting of the burden of proof, but the imposition of the duty of explaining that the accident and resulting injury was not due to his want of proper care. This duty arises from the fact that the agency or thing which caused the injury was under his control and management, and the happening was such as does not usually occur when due care has been exercised.
"The doctrine is well recognized in all courts of the country, and has been *760 frequently applied by the appellate courts of this state, as is amply shown in the review of decisions to be found in the case of Monkhouse v. Johns, from the Court of Appeals, 2nd Circuit, reported in 142 So. 347. * * *
"And then, making it a clear case coming within the doctrine of res ipsa loquitur, we find the following question and answer in his testimony: `Q. I am going to ask you to state to the Court Mr. Anding, your explanation of how you happened to drive your car into the balustrade of this bridge? A. I can't explain it, I don't remember exactly how it happened.'"
Similar facts to the instant case are found in Galbraith v. Dreyfus, La.App., 162 So. 246, and the doctrine of res ipsa loquitur was applied.
Also see Harrelson v. McCook, La.App., 198 So. 532.
In Guiteau v. Southern Parking Co., La.App., 49 So.2d 880, at page 884, is found:
"The reason for the scarcity of such two-vehicle cases seems to be that the rule ordinarily should be invoked only where all of the agencies which may have been involved were under the control of one defendant."
Counsel for appellants contend there was no negligence on the part of the driver of the vehicle in which plaintiffs were riding. Further, that if there was any negligence, the claimants contributed. This last contention is founded upon the theory which requires a guest-passenger to take some steps to avoid injury when he becomes aware of negligence upon the part of the driver. He also maintains some negligence upon the part of the driver must be presumed in order to apply the doctrine of res ipsa loquitur.
The cases cited to maintain the contention this doctrine does not apply here was distinguished by the trial Court in well written reasons, and after examination they are found not to be applicable.
One of the defendants was driving the car in which both plaintiffs were riding as guest-passengers. As stated by the trial Court he knew, or he should have known the circumstances under which he was driving in order to so operate his automobile that no accident would occur solely through his fault. If he did not do anything of a negligent nature to cause the accident he should have been able to explain it. Both claimants were riding upon the rear seat, and since it was presumed the automobile was being operated in a cautious manner immediately prior to the accident, there is no doubt but that it occurred through some negligence of the driver even though he himself, cannot explain it. No other vehicle was involved and it was not proven the lights of the on-coming cars contributed in any way to the accident. Likewise there is no evidence to warrant the application of contributory negligence upon the part of either plaintiff. No matter what caused the accident they were never afforded an opportunity to protest. Contributory negligence in such a case as this must be independent. Unless it is it cannot be imputed to a guest-passenger. See Hergert v. Saucier, La.App., 61 So.2d 545.
Mrs. Fetterly suffered scars to her face and one knee, severe lacerations and bruises on her face, neck, hip and legs. The patella of her left leg was fractured, necessitating an operation, on November 6, 1953. The expert testimony states she would not have maximum recovery until 4 to 6 months after the operation; that traumatic arthritis may occur; that there is a probability future operations will be necessary. Also there was a considerable amount of discomfort to this plaintiff still existing and considerable difficulty in using her knee normally. The lower Court awarded damages as prayed for, which were itemized as, $500 for lacerations, bruises and contusions, $2,000 for injuries to her left leg, $750 for past and present pain and suffering, $750 for future pain and suffering and $1,000 for disfigurement due to the scars on her face, head and left leg and stiffness and partial loss of the *761 use of this leg. The Court below, with well-considered reasoning, awarded this plaintiff the amount she prayed for, which, in our opinion, is correct.
Her husband, Robert E. Fetterly, although claiming $500 for injuries to his left heel, was awarded $50 against McNeely and his insurer, jointly and insolido. The only evidence as to the nature and extent of his injuries was his own statement that he believed he sustained a severe sprain of his ankle, and that an Army hospital physician told him a bone was chipped. This award is correct. He was also awarded $847.14 against McNeely, individually. This last amount covered proven items of expense incurred by him as a result of the injuries to his wife, for the reason that the insurance coverage is limited to $5,000 for bodily injuries to one person, and the last amount was for expenses suffered by him as a result of injuries to his wife who had already been awarded the full amount of the coverage.
This feature of the case came up on rehearing and was brought to the trial Court's attention as one of the grounds upon which a rehearing should be had. The others were reiterations of the defenses and were not considered. The last reason in the motion brought to the Court's attention the question of whether under such a situation the expenses mentioned could be taxable against the insurer. In a written opinion on rehearing it was concluded this item of damage should not legally be assessed against the insurer.
The lower Court based his judgment first, on Gaines v. Standard Accident Insurance Co., La.App., 32 So.2d 633, stating, correctly, that the judgment in the Gaines case had never become final, as a writ of certiorari was granted in the Supreme Court, but its final disposition is unknown insofar as the reports are concerned. In this case we based our opinion on In re Employers' Liability Assurance Corporation, Limited, of London, England, 180 La. 406, 156 So. 447. In the latter the opinion was rendered by the late Chief Justice O'Niell of the Supreme Court. The lower Court remarked that in both cases the Court had the benefit of examining the policies involved. In the present case the article of the policy governing this feature was alleged in the petition and admitted in the answer. It reads:
"That the said Traders and General Insurance Company had issued to the said Ross B. McNeely, or R. B. McNeely, or Ross Bailey McNeely, contract or policy of insurance, by which it agreed to assume the legal liability incurred through the use and operation, by the named insured or with his permission, of said 1952 Buick Roadmaster automobile, up to limits of $5,000.00 for any one person and $10,000.00 for any one accident, for bodily injury and up to limits of $5,000.00 for property damage."
We agree with the trial Court that a construction of the quoted article of the policy does not entitle the husband of Mrs. Fetterly to a judgment against the insurer for the consequential damages of $847.14.
The fees of the experts, taxed as costs, are not questioned by the appellants, and the sum total of these is $200, three doctors having testified. We believe this award to be correct.
For the reasons hereinabove assigned, the judgment of the District Court is affirmed.