154 So.2d 497 (1963)
Fred J. JAMES, Jr.
v.
STATE of Louisiana, through the BOARD OF ADMINISTRATORS OF CHARITY HOSPITAL OF LOUISIANA AT NEW ORLEANS, the Charity Hospital of Louisiana at New Orleans, Peerless Insurance Company and Leon Ricks.
No. 1061.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 1963.
*498 Harold H. Wedig, Normann & Normann and David R. Normann, New Orleans, for plaintiff-appellant.
Porteous & Johnson, William A. Porteous, Jr., Rudolph J. Weinmann and Lloyd C. Hoffmann, New Orleans, for defendants-appellants.
Merritt & Jerry, Edward P. Jerry, New Orleans, for intervenor and appellee.
Before YARRUT, SAMUEL and CHASEZ, JJ.
YARRUT, Judge.
Plaintiff sued to recover damages for personal injuries, mental and physical pain and suffering, loss of wages and earning power, resulting from an automobile collision between a truck of his employer, while being driven by Plaintiff, and a truck of Defendant, Charity Hospital of Louisiana.
Defendants are the State of Louisiana, through the Board of Administrators of Charity Hospital of Louisiana, at New Orleans, the Charity Hospital of Louisiana at New Orleans, the Peerless Insurance Company, liability insurer of the first-named Defendants, and Leon Ricks, driver of the Hospital's truck.
*499 From a judgment in favor of Plaintiff and against Defendants in solido, the Defendant-insurer limited to its policy maximum coverage of $20,000.00, plus interest thereon and costs, all Defendants have appealed, and Plaintiff answered for an increase in the award.
The collision occurred in May 1960, at the intersection of Gravier and LaSalle Streets, in New Orleans. Plaintiff's truck was travelling on Gravier towards the Lake, and the Hospital's truck on LaSalle going uptown. The District Court found that the Hospital's truck failed to stop in obedience to a "stop" sign controlling traffic on La-Salle at the intersection of Gravier, entered the intersection negligently, and struck the right side of Plaintiff's truck, knocking it across Gravier where it came to rest on its side.
In Central Louisiana Electric Company v. Hodges, La.App., 137 So.2d 132, the court restated the established rule, viz.:
"The law also is settled to the effect that a motorist who merely stops before entering a right-of-way thoroughfare has performed only one-half of the duty resting on him. He not only must stop, but he must also look out for vehicles on the intersecting street, and he must not enter until he ascertains that it is safe to do so. To stop and then proceed forward into the favored street, without first determining that it is safe to enter the intersection, constitutes negligence. Hernandez v. State Farm Mutual [Automobile] Insurance Co., La. App. 3 Cir., 128 So.2d 833; McCoy v. State Farm Mutual Insurance Co., [La. App. 3 Cir., 129 So.2d 66]; Benoit v. Vincent, [La.App. 3 Cir., 132 So.2d 75]." See also Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849.
We find no error in the finding by the District Court on the question of Defendants' liability.
Plaintiff suffered personal injuries, resulting in his becoming a paraplegic and permanently confined to a wheel chair for ambulation. He was 44 at the time of the collision, with a wife and two children of his own, and three step-children.
Regarding damages for personal injuries, the District Court allowed $216,712.65, made up as follows:

Wages loss to date --------------------- $ 7,875.00
Present value of future wage
loss ----------------------------------- 77,439.44
Medical expenses to date --------------- 7,198.21
Future drugs --------------------------- 39,200.00
Future medical and hospitalizations ---- 10,000.00
Pain and suffering ---------------------- 75,000.00

Plaintiff asks for an increase in all items allowed, and for additional items not allowed by the District Court, to-wit:
1. $109,200.00 for past and future services rendered and to be rendered by his wife for the remainder of his life;
2. For legal interest on the full amount of the judgment of $216,712.65 from date of suit until paid, instead of limiting interest on the insurer's $20,000.00 maximum liability.
Regarding allowance of $109,200.00 for services for Plaintiff's wife, no justification can be found in Louisiana law for nursing services performed and to be performed by a wife for her husband. LSA-C.C. Art. 119 declares that the husband and wife owe each other mutual fidelity, support and assistance. Planiol, in commenting on the French law from which Art. 119 is derived, says that the duty of assistance "embraces the personal care to be given an ill or infirm spouse." Planiol, Vol. 1, Pt. 1, 917, p. 525. The "nursing" services rendered by Plaintiff's wife to him were part of her obligation of assistance to her husband under Art. 119. No compensation can be recovered by Plaintiff herein for services which were the normal marital obligations *500 of the wife. Frye v. Joe Gold Pipe & Supply Co., La.App., 50 So.2d 38.
Regarding claim for interest against insurer on the full amount of the judgment of $216,712.65 rather than on the policy limit of $20,000.00, the policy provides:
"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall: * * *
"(1) * * *
"(2) Pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in Court such part of such judgment as does not exceed the limit of the company liability thereon; * *

"And the amount so incurred, except settlements of claims and suits, are payable by the company in addition to applicable limit of liability of this policy."
Plaintiff's contention is that the above provision is a standard insurance clause, and must be construed as creating insurer's liability for interest on the entire judgment, until the amount of the policy limit, plus interest, has been tendered, offered or paid.
A complete review of the national jurisprudence on this subject is contained in River Valley Cartage Co. v. Hawkeye-Security Ins. Co., 17 Ill.2d 242, 161 N.E.2d 101, 76 A.L.R.2d 978, showing that the courts are divided on the issue, pro and con. The reasons for the divergent views are: Prosince the insurer is in control of the litigation (as it was here) determining the liability of the insured, and may stop the running of any interest against itself by tendering, upon an adverse judgment merely the amount for which it is liable under the policy, the insurer has, in effect, agreed, if it fails to make a timely tender, to pay interest on the entire judgment for the surrender by the insured of his right to effect a settlement; and Contrasince interest is compensation for the use of money and where the amount for which the insurer may be liable is clearly defined, "all interest" can reasonably refer only to interest on the sum the insurer is obligated to pay since, during the delay in the payment of the judgment, the insured had the use of the money for which it is liable.
Both views, however, recognize the general rule of construction that, where an insurance policy is ambiguous, it is construed in favor of the insured. However, on this last point, the divergent views differ on whether this interest provision is actually uncertain or ambiguous.
Our jurisprudence is in accord with the above rule of interpretation of ambiguous insurance policies, and the only cases approaching the "interest" question are: Hobbs v. Employers' Liability Assur. Corp., La.App., 188 So. 748, which is only by implication and dicta; and Woodward v. Tillman, La.App., 82 So.2d 121, where the court merely held that interest was due on the full award from judicial demand, rather than from date of judgment, notwithstanding the maximum policy liability was exhausted by the judgment, not that interest was due on the amount of judgment in excess of the policy limit.
Defendants cite Bergeron v. Department of Highways, La.App., 51 So.2d 112, reversed on other grounds, 221 La. 595, 60 So.2d 4, and Lowery v. Zorn, 184 La. 1054, 168 So. 297, in support of the view that interest is only on the limits of the policy. The issue in these cases was not clearly drawn to serve as authority here for either view.
The divergence of opinion among the courts of other states with respect to whether this particular provision is uncertain and ambiguous, leaves a quandary. If the consensus among them were that the provision is ambiguous and uncertain, we would agree that the doubt should be resolved in favor of the insured. In Louisiana *501 ambiguities are construed in favor of the insured. However, we must first decide whether the provision for interest is ambiguous and to that end we must search for the intention of the parties. LSA-C.C. Art. 1945.
In any policy of insurance, the premium is based on the insurer's maximum liability. It is difficult to construe this provision to mean that the insurer must pay interest on the excess of its liability unless it pays or tenders the full amount of its policy limit after judgment. To subject the insurer to this alternative would force it to surrender its legal right for a full defense of its liability for any amount within the policy limit, however small, because of the insured's alleged negligence.
An insurance policy is a contract between the insurer and the insured, and courts are bound to give it legal effect according to the intent of the parties, to be determined by the words of the policy, provided such effect will not lead to absurd consequences. Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777.
To hold that the insurer must pay or tender interest on the full amount of a judgment, in this case over ten times its policy maximum liability, in order to avoid payment on the gross excess of its contractual liability, and at the same time surrender its right to defend itself against any liability because of the insured's freedom from negligence, and at the same time defend on appeal the insured's liability for the excess amount, would, in effect, lead by an absurd consequence, never intended by the parties. Uncertainty, even if it exists, should never lead to absurdity.
Accordingly, we must agree with the District Court that the insurer is only liable for interest on the amount of its maximum liability of $20,000.00, and taxable costs.
The other amounts over which there is demand for increase and decrease, respectively, are:
Wage losses:
Plaintiff's wage losses from the accident to the date of trial were correctly figured at $75.00 per week, his salary at the time of the accident. Plaintiff's employer testified he would have received a promotion and increase in salary prior to the date of trial. In the absence of evidence as to when, during the two-year period, the raise would have become effective, the District Court was justified in using $75.00 as the basis of its calculation.
Future wage loss was properly computed at $95.00 per week, as Plaintiff would have been earning that much by the time of trial, and based on 27.96-year life expectancy, based on the Mortality Tables in LSA-Tables, p. 605.
Plaintiff further contends he should be reimbursed for wages he would have earned in the summer months as an employee at Pontchartrain Beach Amusement Center. The only evidence to support this contention is the testimony of Plaintiff and his wife that he had been hired for the job, but had never started to work, not corroborated by any official of Pontchartrain Beach. This item was properly disallowed by the District Court.
Medical expenses:
Defendants have urged that future medical expenses should be calculated on a life expectancy, as shortened by the injuries, rather than Plaintiff's life expectancy prior to the collision. The record contains statements that Plaintiff's life expectancy was shortened as a result of his injuries. This is qualified, however, by Dr. Morrow's testimony:
"Q. * * * With respect to this man's life expectancy, isn't that one of the reasons for all of this care you have mentioned? With *502 proper care and if the man is able to provide himself with proper medication it is much more to be expected that he will experience a longer life expectancy?
"A. Yes, with proper care of the urinary tract I think his life expectancy can be prolonged."
Since proper medical care will enable Plaintiff to live out his normal life expectancy, it was proper for the District Court to use that expectancy in calculating the expense of such care.
Plaintiff asks that the award of $10,000.00 for future medical and hospitalizations be increased to $30,000.00. All three doctors who testified were in agreement that Plaintiff will need future medical care.
Dr. Levy, neurologist, testified that Plaintiff will require treatment for bladder and kidney infection and pressure sores which are likely to develop. Dr. Nicolle stated that he or some other general practitioner will have to supervise care of Plaintiff for the rest of his life.
Dr. Morrow, urologist, said Plaintiff would spend about $35.00 each year for X-rays and solution used to "visualize the urinary tract." Further, a urologist would have to change his catheter which costs about $5.00, every four to six weeks.
The sum of $10,000.00 is reasonable for the above contemplated expenses. The cost of X-rays, solution, and catheter amounts to about $2,000.00 over a life expectancy of approximately 28 years. This leaves $8,000.00 for doctor visits and hospitalizations.
Pain and suffering:
An award for pain and suffering cannot be measured by any fixed rule of thumb, but must be governed by awards for similar injuries. Defendants point out that paraplegics can drive cars, play basketball, acquire professional degrees, sell newspapers, and learn various trades. But who wants to be a paraplegic? Despite these opportunities, the fact remains that Plaintiff will continue to experience much pain and suffering. The mere thought that Plaintiff will be confined to a wheel chair for ambulation for the balance of his life, is depressing. All three medical experts were in agreement that Plaintiff's condition is permanent.
As stated by the District Judge in his reasons for judgment, the award of $75,000.00 for pain and suffering covers his life in a wheel chair, resulting sexual impotence, anxieties, loss of social life, communication with his children diminished, and for his total dependency on others for his every movement. This award is reasonable in light of the evidence presented.
In Fullilove v. United States Casualty Co. of New York, La.App., 129 So.2d 816, plaintiff recovered $35,000.00 pain and suffering for fracture of both knees, left ankle, and left wrist, resulting in 50% permanent disability of knees and 40% disability of left wrist. The court said he would continue for an unpredictable period of time to "experience some pain and discomfort." If $35,000.00 is adequate for such injuries, surely $75,000.00 is not too much for total disability of the entire lower half of the body, with uncontroverted evidence as to considerable permanent future pain.
The District Court's award of $216,712.65 should be affirmed. Out of this amount, American Mutual Liability Insurance Company is to be reimbursed for medical expenses paid to and on behalf of Plaintiff and workmen's compensation benefits paid to Plaintiff through the date of payment of the judgment.
For the above and foregoing reasons, the judgment of the District Court is affirmed; Defendants to pay costs in both courts.
Affirmed.