## Michon et als. *v.* Gravier et als.

Where there is a discrepancy in the boundary lines, as shown by a public act on the one hand, and a plan attached to the act on the other, if the description be clear and unambiguous in the former, it will prevail.

On the 16th of September, 1820, M. & G. entered into an act of compromise, by which G. conveyed to M., with a warranty against his own act, all his right in a portion of the batture, in the faubourg St. Mary. By the terms of the act, the batture conveyed extended to the water's edge. On the 20th of September, 1820, G. made an act of donation to the city of New Orleans, by which the batture previously conveyed to M. was created *locus publicus*. Under the facts of the case, it was held, that for the purpose of the donation, G. was to be regarded as the *negotiorum gestor* of M., who was bound by the act granting the batture to the public. In 1851, the act of donation of September 20th, 1820, was, by agreement, rescinded. This action was brought by the heirs of M. against the heirs of G. to recover the proceeds of the batture sold by G. to M. in 1820, which proceeds were received by the heirs of G. under the Act of 1851, rescinding the donation of 1820. *Held:* The contract of 20th of September, 1820, so long as it endured, seemed to have been viewed by M. and by his heirs, as binding upon them ; but when that donation was rescinded in 1851, and the *locus publicus* created by the contract of 1820 was again made the subject of private ownership, the warranty contained against their own acts in the conveyance of the 16th of September, 1820, unquestionably forbade the heirs of G. to put into their own pocket the proceeds of the land embraced in that conveyance to M.

The heirs of G. were bound to account for the proceeds of the batture conveyed to M. when called upon, but the right of action only accrued when the money was received, which, being less than two years before this suit was brought, the prescription of ten, twenty and thirty years could not avail.

The principles decided in *Roselius* v. *Delachaise*, 5 Ann., affirmed.

A PPEAL from the Second District Court of New Orleans, *Lea,* J. *Griffon* and *St. Paul & Bouney*, for plaintiffs. *Denis* and *Roselius*, for defendants and appellants.

Buchanan, J. On the 16th of September, 1820, the ancestor of plaintiffs and the heirs of *Bertrand Gravier* made a compromise, by act before a notary public in New Orleans, of a lawsuit then pending in the United States Court, in the said city, wherein *Michon* was plaintiff, and the *Heirs of Gravier* defendants. The suit in question was a petitory action, claiming the batture extending to the river, opposite a lot having a front of sixty feet on Tchoupitoulas street, within the faubourg St. Mary.

By the compromise in question, it was agreed between the parties, that this batture should be divided by a line running from Tchoupitoulas street to the margin of the river, into two equal parts, of which one should belong to *Michon* and the other to the *Heirs of Gravier :* and each party conveyed to the other, with a warranty only against his own acts, the half of the batture to the water's edge. Annexed to the compromise, and referred to therein, was a plan upon which the division of the ground was figured by a line, which says the act of compromise, "vient aboutir à la Nouvelle Levée, et qui doit, dans l'intention des parties, être prolongée jusqu'à la ligne marginale du fleuve."

This compromise differs, in two important particulars, from those in the cases of *Jourdan*, of *Poydras*, and of *Tourné*, against the same defendants, lately decided by us. In all of those cases, the description of the property reciprocally conveyed, limited the property by the New Levee, or by New Levee street, on the side towards the river. In this, the terms of conveyance extend to the water's edge. The expression "jusqu'à la ligne marginale du fleuve," has no ambiguity; it conveys the whole alluvion or batture. The second point of distinction between this case, and those just mentioned, consists in this: that the compromise with *Michon* was made before the act of donation by the *Heirs of Gravier*, to the city corporation, of their rights in the batture outside of New Levee street; while the compromises with *Jourdan*, *Poydras* and *Tourné*, were made after that donation.

It is urged in argument by defendants' counsel, that the plan which is annexed to this contract of compromise, and upon which the lateral lines of the property mutually conveyed, are prolonged no further towards the river than the New Levee, ought to control the words of the contract; and the case of *Suary* v. *Duralde*, 1 L. R. 260, is cited. That was the case of a contract for building a house; and the plan, which was a part of the contract, was held to be properly used for the purpose of supplying defects in the specifications, upon an issue whether certain work figured in the plan, but not mentioned in the specifications, was extra work or not. It will be perceived that the plan, in that case, was not admitted to diminish or abrogate any stipulation of the contract, as is sought to be done here. We have copied the words of the contract, which refer to the fact of the line of division upon the plan terminating at the levee, and which add that the intention of the parties is, that the said line be prolonged to the margin of the river, in accordance with the description of the land conveyed, contained in the deed. The words of explanation are a part of the conventions of the parties, which cannot be disregarded.

The effect of the conveyance of *Gravier's Heirs* to *Michon*, of all their right in a portion of the batture, on the 16th of September, 1820, was to incapacitate them from donating the same rights to the city on the 20th of September, 1820, unless with the consent of *Michon*. Such donation came expressly within the warranty, "leurs faits et promesses," contained in the deed. We cannot, however, suppose that *Michon* was ignorant of that donation, which followed so immediately upon his own compromise with *Gravier's Heirs*. The clauses in the compromise by which *Michon* agreed to make the new levee, and to pay three hundred and ten dollars to the city treasury, imply a knowledge on his part, and a ratification of the arrangements pending between the *Heirs of Gravier* and the city, and which ripened a few days afterwards into the contract between those parties of the 20th of September, 1820. Indeed, the petition in this case alleges, that the contract of the 16th of September, 1820, was made in contemplation of that of the 20th of September. When, therefore, the *Heirs of Gravier* donated to the city the batture, which but a few days previously they had conveyed to *Michon*, they must be presumed to have done so, as agents, or *negotiorum gestores*, of *Michon*. The contract of September 20th, 1820, so long as it endured, seems to have been viewed by *Michon* and by his heirs, as binding upon them; but when that donation was rescinded in 1851, and the *locus publicus* created by the contract of 1820, was again made the subject of private ownership, the warranty against their own acts contained in the conveyance of the 16th of September, 1820, unquestion-

MICHON
v.
GRAVIER.

ably forbade the *Heirs of Gravier* to put into their own pockets, the proceeds of the land embraced in that conveyance to *Michon*. They were bound to account for those proceeds when called upon. The prescription of ten, twenty, and thirty years, invoked by defendants, cannot avail them. The right of action of plaintiffs, to claim of defendants money received by them for the account of plaintiffs, only accrued when the money was so received, which was less than two years before this suit was brought.

Defendants have set up in reconvention, a claim for $1000 counsel fees for defending a suit of *Parish et al.*, relative to the property of the batture of the faubourg St. Mary. This claim has been opposed on the authority of the decision in *Roselius* v. *Mrs. Delachaise*, 5th Ann. In the case quoted, *Mr. Roselius* claimed as having been employed by *Mrs. Delachaise*. But in the present case, we do not understand that there is any pretence that the learned counsel, who represented the *Heirs of Gravier*, in the defence of the suit of *Parish*, were retained by the present plaintiffs; and as the *Heirs of Gravier* had, undoubtedly, large interests of their own at stake in that suit, they must be supposed, in the absence of contrary proof, to have engaged counsel in reference to those interests.

We have not been able to perceive any error to defendants' disadvantage, in the calculation of the amount coming to plaintiffs, upon which the judgment of the District Court was based.

Judgment affirmed, with costs.