FOURNET, Chief Justice.
This litigation[1] commenced as a dispute between two large groups of people, descendants of branches of the Boutté family, who lay adverse claim to a strip of land comprising some 400 acres, situated on the island of Barataria (sometimes referred to as the island of Boutté), Jefferson Parish, partly in T. 16 S., R. 23 E., and partly in T. 16 S., R. 22 E., which might be described as overlooked or lost land. The plaintiffs, descendants of brothers and sisters of Francois Zenon Boutté,[2] the last record owner of the property (whose children predeceased him), claim title as his heirs, while the defendants have as a basis for their title an ex parte judgment of the 24th Judicial District Court, Parish of Jefferson, of June 26, 1936, recognizing 162 of their number to be “sole surviving heirs at law of Francois Thisapherne Boutté and of Francois Zenon Boutté, deceased,” and placing them in possession, in stated proportions, of an undivided half interest in the property; and decreeing the other half interest to belong to Edgar H. Powell as their assignee. The petition herein was filed on July 26, 1938, by 1,079 individuals against the 162 named persons in the above judgment as well as against Powell, a title abstractor, Alexis Brian and A. Morgan Brian, attorneys, and Edwin P. Brady — the Brians and-Brady having acquired their interest through Powell. The matter is here on appeal for the third time.
It appears from the case as originally before us (March of 1941) that the 162 defendants were sought to be brought' into’ court by service of process on Brian and Brian as their alleged agents and attorneys-in-fact; but upon denial by the Brians that they represented the said individuals ártd acquiescence by counsel for the. plaintiffs, in the pleadings filed by the Brians, no further attempt was made to cite that group and the suit against those defendants was dismissed. There remained as defendants in the case when first presented here on appeal by the plaintiffs, only Powell, the Brians, and Brady; and after due consideration we reversed the lower court’s judgment maintaining various exceptions, particularly the exception of no cause of action *753 which had been predicated on the contention that plaintiffs could not advance their claim to ownership of the property as heirs of Francois Zenon Boutté without first bringing a direct action to set aside the ex parte judgment of June 26, 1936, in the Succession of Francois Zenon Boutté; and we remanded the case for trial on the merits. See Dugas v. Powell, 197 La. 409, 1 So.2d 677.
When the matter was before us for the second time (January of 1945), again presenting an appeal by the plaintiffs from a judgment of the trial court maintaining a jplea in bar filed by the defendants (Powell, Brady, Alexis Brian and the heirs of the late A. Morgan Brian), based “solely on the ground that the defendants herein ‘believed’ at the time they acquired their interests in the property that the 162 persons named in the ex parte judgment were the heirs of the deceased,” we reversed and .again remanded the case for trial on the merits. See Dugas v. Powell, 207 La. 316, 21 So.2d 366.
On June 15, 1945, trial of the present litigation on the merits was begun, the testimony being devoted largely to the tracing ■of antecedents of the witnesses; and be■cause of the delays incident to obtaining ■depositions and procuring marriage and ■death records, many continuances were re■quired and these extended over a period of almost two years. Meanwhile the Brians, on February 25, 1947, sought and were granted permission by the court to withr draw as defendants upon representations which amounted to a disclaimer of interest in the land in dispute.
When the case was again called for trial on April 14, 1947, John C. Hollingsworth, one of the attorneys representing plaintiffs who had been active in the case since his association therein on August 16, 1938, suddenly withdrew as counsel, and dictated in open court a petition of intervention and third opposition against all other parties to the litigation, both plaintiffs and defendants,[3] basing his claim on a judgment of the District Court in the Succession of Jean Baptiste Boutté, dated August 20, 1946, wherein numerous named individuals were recognized as “Members of the Family of Jean Baptiste Boutté” and, as such, were declared to be owners of United States Patent No. 1,110,173, issued to the members of the said family on January 13, 1941, and granting to them some 20,770 acres of land therein described (encompassing the whole of Barataría Island including the strip here in dispute) — subject, however, to recognition of ownership of John C. Hollingsworth and Hubert M. Ansley, in the proportion of }4 each of the virile share of each of the parties therein recognized as Members of the Family, in consideration of services rendered.
*755 Judgment was handed down by the District Court on February 23, 1951, in favor of the intervenor, John C. Hollingsworth, and against all parties originally plaintiff and all parties originally defendant, ordering that they “deliver possession of the property” in dispute to Hollingsworth “as owner in indivisión” of an undivided one-fourth interest.[4] It is from that judgment that the present appeal was taken.[5]
It appears that the island of Barataría was granted by the French Government to M. M. Villars and Dubreriel, said grant having taken place prior to the year 1754, and that at the time of the Louisiana Purchase the property was owned by one Pierre Lavigne, whose heirs sold to the brothers Hilaire Boutté and Jean Baptiste Boutté, jointly, by .deed of July 8, 1805. By mesne conveyance Francois Zenon Boutté (the son of Antoine Boutté and a nephew of the above named men) acquired Hilaire’s half interest on July 5, 1819. Meanwhile, Jean Baptiste Boutté having gone into bankruptcy, his interest was purchased by a son, Philippe Boutté, on June 17, 1815. It further appears that there had been a partition of the property between the brothers Jean Baptiste and Hilaire, the former taking the northern portion of the island and the latter the southern portion. That there was such a partition is evidenced by all of the transactions relative to the property that look place following Francois Zenon’s purchase of Plilaire’s share. Philippe Boutté (who had acquired his father’s interest at the bankruptcy sale) executed an instrument on June 13, 1820, acknowledging that his acquisition had been made for the joint account of himself and his brothers and sisters;[6] and in the same instrument, in which he was joined by his brothers and sisters, they partitioned the property, each receiving a designated portion of the northern half and later disposing of it in full ownership to third persons. Similarly, Francois Zenon Boutté (who had acquired Hilaire’s half) in disposing of his property made sales relative to the south half and in full ownership. There is also evidence that the surveyor Lafon made a plan of the partition. This is reflected by the procés verbal of a survey by Allon d’Heme-court attached to an act of sale of October 9, 1837, by Philippe Boutté, acting in his capacity as administrator of the succession *757 .of his brother Godefroy and disposing of land which had been allotted to Godefroy in the. division of the northern part of the island, in which d’Hemecourt, after reciting that the brothers had divided the island “in half between them,” states: “This knowledge is the result of a plan of Mr. Lafon inserted in this register and again in the register of the Bureau of Lands at New Orleans. This plan * * * indicates * * * the division into two equal parts * * *. This line of division has been shown me on the places by Mr. Zenon Boutté and by Mr. Thisapherne Boutté and have perfectly recognized same by the blazing of the trees; * * *.” The said procés verbal was approved and signed by “property owners interested,” including Francois Thisapherne Boutté and Francois Zenon Boutté. Clearly, therefore, not only was the partition acted upon in fact, but it was ratified by the signatures of the parties to the various instruments mentioned above.
The strip- of land involved in this litigation is within the southern portion of the island, situated in the rear of two tracts sold by Francois Zenon Boutté, the one to Mrs. Hortense Duvalle on August 26, 1819, and the other to Mrs. Marie Duvalle on the same date, and insofar as the record discloses was never disposed of by him. Edgar H. Powell, a title abstractor, discovered the location of this property some time during the early 1930’s and sought out those whom he thought to be the- heirs of Francois Zenon Boutté; and erroneously believing that Francois' • Thisapherne Boutté, the first cousin of Francois Zenon, had been his nearest of kin and sole heir, Powell obtained contracts ■.of . :employment from one hundred si-xtyAwo descendants of Francois Thisapherne Boutté and had them placed in possession of the land by judgment of June 26, 1936; in Succession of Francois Zenon Boutté, -mentioned earlier in this opinion. Powell-had his interest recognized in the judgment and at once transferred a half' to' Messrs. Alexis Brian and A. Morgan Brian,'.attorneys'at law, who had represented the parties in obtaining the ex parte .judgment. The Brians transferred the surface rights in their interest in the land to Edwin P. Brady on September 7, 1936.
From the foregoing it is obvious that the interest acquired by Powell, the only defendant now remaining in the case, based on his contracts of employment from the heirs of Francois Zenon Boutté’s first cousin, must yield to the- claims of the plaintiffs as descendants of brothers and sisters of the last record owner.[7]
In passing to the rights and claims of the intervenor, we deem , it necessary to point out that the record in this case comprises not only the transcript of proceedings and the exhibits in the instant suit on its three separate journeys, to this Court, but the records in five other cases as well, *759 these having been either made part of the pleadings or filed in evidence, and bearing the following titles and district court docket numbers: Ernest Boutté, et al., v. Edwin P. Brady, et al., No. 6,661; Succession of Francois Zenon Boutté, No. 11,842; Succession of Jean Baptiste Boutté, No. 14,363; Edward P. Escoffier v. Stephen Paul Baudier, No. 15,178; and L. Maurice Baudier, et al., v. Hubert M. Ansley and John C. Hollingsworth, No. 19,941; and to throw light thereon we must call attention to these several cases, which culminated in the judgment which forms the basis of intervenor’s claim.
A little more than two years after the present proceeding (filed on July 26, 1938) was instituted, Hollingsworth as attorney for Stephen Paul Baudier, Jr., and Vernon J. Main, petitioned the Court (October 10, 1940) to have Baudier and Main appointed administrators of the succession of Jean Baptiste Boutté, alleging that they were his direct heirs, that the decedent had departed this life, intestate, in 1823, leaving inchoate rights involving land .situated in Jefferson Parish, and praying that letters of administration issue jointly to them; and on the same date a petition of intervention, joining in the prayer for the appointment of the said administrators, was filed by Hollingsworth as attorney on behalf of a very large number of persons claiming to be heirs of Jean Baptiste Boutté. Baudier and Main were confirmed as administrators and an inventory was taken, showing the estate to consist solely of “All of the title and interest of Jean' Baptiste Boutté under Claim No. 166, third class, to the Family of Boutté as reported by Sam Hooper [Harper], Commissioner of the Eastern District, dated January 6,. 1821, American State Papers, Duff Green Edition, Volume 3, page 518,” followed by a description of the property, totaling 20,-770 acres.
The above reference is to a report listing a number of private land claims in the-eastern district of Louisiana, prepared by Sam M. Harper, Register of Land Office, E. district of Louisiana, under date of January 6, 1821, made to the Secretary of the Treasury pursuant to the. provisions of the Act of May 11, 1820, Chapter 87, entitled “An act supplementary to the several Acts for the adjustment of Land Claims in the State of Louisiana,” directing that such a report be made by the Registers together with the. substance of the evidence in support of the claims and their opinion of the credit to which such evidence was entitled. In his report Register Harper recommended for confirmation by the United States, Claim No. 166, affecting the island of Barataría: “The family of Bontté (Jean B. Bontté) successor of Hilaire Bontté, Tisapherne Bontté, claim a tract of land, being an island called Barrataria, in the district of Bárrataria, bounded north by the Bayou Villars, east by Bayou Onihas and Bayou Rigolets, south by a place called the Tem *761 pie, and west by Pierrot, and the lake of Onihas, containing fourteen and fifteen leagues in circumference. The claimants prove by affidavits that this land was granted by the French Government to M. M. Villars and Dubreriel before the year 1754; that, in that year, it was bought at auction by Villars, the son; that it has since descended to them by purchase, and by them possessed and occupied upwards of forty years. It appears a great portion of this island is unfit for cultivation, and that the family claiming it are numerous.” The above claim together with the other claims submitted by Harper were communicated to the Senate on January 13, 1823, and by Act of February 28, 1823, 3 Stat. 727, it was provided “That the claims for lands within the eastern district of the state of Louisiana, described by the register of the land office of the said district, in his report to the Secretary of the Treasury, bearing date the sixth of January, one thousand eight hundred and twenty-one, be, and the satne are hereby, confirmed, against any claim on the part of the United States.” (Emphasis supplied.)
It appears, however, that on January 13, 1941, a few months after the taking of inventory in the Succession of Jean Baptiste Boutté, the United States through its Land Office recognized the “Private Land Claim” No. 166 for the tract of land called “Barrataria,” confirmed by Act of Congress on February 28, 1823, which had been duly surveyed by plat approved December 8, 1842, and issued its Patent No. 1,110,173 to the “family of Jean B. Boutté” and to their heirs and assigns, granting to them the therein described lands, aggregating 20,770.98 acres.
On June 27, 1941, the administrators, stating that they desired to retain other counsel and had terminated the services of Ansley (whom they had employed) and Hollingsworth (who had been brought into the case by Ansley), sought to remove them by rule. This resulted in a series of moves by Hollingsworth against the administrators, consisting of (1) a petition of the same date (June 27, 1941) presenting the names of other persons for consideration and qualification as additional administrators or, alternatively, praying that the appointments of Baudier and Main be vacated for the causes alleged therein; (2) a further petition (August 16, 1941) in the name of three “heirs of decedent,” stating that, contrary to allegations in the original petition, there were in fact no debts of Jean Baptiste Boutté and no need for any administration of his estate;[8] (3) an in *763 dependent action, filed on December 19, 1941, entitled Edward P. Escoffier, et al. v. Stephen P. Baudier, et al., to have the administrators removed; and (4) on the same date, a new petition in the Succession proceedings to rescind the administration and to cancel the appointment of the administrators. The Escoffier v. Baudier suit was consolidated for trial with that of Succession of Jean Baptiste Boutté and, on August 20, 1946, the judgment was rendered which forms the basis of the claims of the intervenor. In that judgment the trial judge held that the appointment of the administrators was void, having been improvidently granted under the erroneous assumption that the U. S. Land Office required such appointment so that a patent, when issued, could be issued in the name of legal representatives of claimants; and in the judgment he further decreed the petitioners named therein to be “ * * * owners as Members of the Family of Jean Baptiste Boutté of the United States Patent No. 1,110,175 [sic] * * * subject to the recognition now made and Ordered, Adjudged and Decreed, that John C. Hollingsworth and Hubert M. Ansley, in the proportion of one-fourth (¡4) each, are decreed * * * to be the Owners of the other One-Half (Y£) of all of the said United States Patent Rights and the Lands therein granted.”[9]
It is the plaintiffs’ contention that the patent issued in 1941 to the “family of Jean B. Boutté” did not invest the heirs of the confirmees with some species of new title; it was merely a recognition of the claims of plaintiffs and others, and further evidence of the confirmation of title by Act of Congress in 1823, the said Act being merely a quitclaim of any interest on the part of the United States.
The brief filed by intervenors’ counsel[10] has been carefully studied, and from our analysis we do not find that the above facts relating to the title, as reflected by the record, are in any way disputed. The sole claim advanced — without citing authorities, and referring us only to the brief of amicus curiae[11]—is, that the law relative to *765 patents sets up a period of respite, after which a confirmation or patent may not be attacked except for fraud. Counsel in a very ingenious argument seem to imply that plaintiffs in some manner have lost their right to claim the property because they cannot show a previously existing confirmation or patent in their own name, and therefore “have failed to overcome the inherent title of Jean Baptiste Boutté as shown by the confirmation;” and in as much as they have failed to allege or prove any fraud in this case, or that they have a title derived from Jean Baptiste Boutté or his heirs, they are without standing in court
The Supreme Court of the United States in the case of Langdeau v. Hanes, 21 Wall. 521, 88 U.S. 521, 22 L.Ed. 606, 609, very aptly pointed out that “In the legislation of Congress a patent has a double operation. It is a conveyance by the government when the government has any interest to convey; but where it is issued upon the confirmation of a claim of a previously existing title it is documentary evidence, having the dignity of a record, of the existence of that title, or of such equities respecting the claim as justify its recognition and confirmation.” And in Whitney v. Morrow, 112 U.S. 693, 5 S.Ct. 333, 334, 28 L.Ed. 871, 872, the Court said: ’'If, by a legislative declaration, a specific tract of land is confirmed to any one, his title is not strengthened by a subsequent patent from the government. * * * It would thus be an instrument of quiet and security to him, but it could not add to the validity and completeness of the title confirmed by the act of congress.” (Emphasis ours.)
In the instant case, there cannot be the slightest doubt that long before the cession to the United States of the territory of Louisiana, the island of Barataria had passed into'private ownership; consequently, it never became incorporated into the public domain of the United States;[12] and therefore the confirmation, patents, and other dealings of the United States government with reference thereto were simply recognitive of the private existing claims, intended and purporting to operate as mere quitclaims. See Louis v. Giroir, 40 La.Ann. 710, 4 So. 878; Langdeau v. Hanes, supra; Whitney v. Morrow, supra. It therefore follows that the widow and heir of the intervenor derive no aid from the patent issued on January 13, 1941.
*767 While the then living owners were sought to be recognized and their claims recommended for confirmation in Harper’s report of January 6, 1821, their identification suffers somewhat from lack of clarity; yet there is nothing in the wording of the report to derogate or take away from the claim of Francois Zenon Boutté. Certainly it was never the government’s intention, either through its Register, or in confirming the report of the Register, to divest any then-existing titles; and while the wording of the claim is not as clear as might be desirable, we think, upon analysis with the background of the title history in mind, that support is given to the contention of the plaintiffs that by the words “successor of Hilaire Bontté” was meant Francois Zenon Boutté, since the latter was in fact the successor of Hilaire; and that the reference to “The family of Bontté (Jean B. Bontté)” can only refer to the five children of Jean Baptiste Boutté who at the time owned the other half of the island, through Philippe Boutté’s purchase for their account from his father’s syndic at the bankruptcy sale of June 17, 1815; and obviously the “Tisapherne Bontté” mentioned therein (one of the five children to whom was allotted a specific tract in the northern part of the island when they, the children of Jean Baptiste Boutté, partitioned the property by the instrument of June 13, 1820) was one of those the Register had in mind when he observed “ * * * that the family claiming it are numerous.”
For the reasons assigned, the judgment of the lower court is reversed and set aside; and it is now ordered, adjudged and decreed that there be judgment in favor of the original plaintiffs or their successors and against the defendant Edgar H. Powell, and Mrs. Maude Snyder Hollingsworth and Mrs. Shirley Hollingsworth Keith, successors to the intervenor John C. Hollingsworth, recognizing the said plaintiffs and their heirs or successors as heirs of Francois Zenon Boutté and placing them in possession of the portion of Barataría Island, in the proportions listed beside their respective names in the pleadings, more fully described as A certain tract of land situated in the Parish of Jefferson in Township 16 South, Range 23 East, and partly in Township 16 South, Range 22 East on the Island of Boutté, same being a strip of land five arpents in width and beginning at a distance of twenty-five arpents from Bayou Barataría at the rear line of the two tracts of land conveyed by Francois Zenon Boutté to Madam Hortense D. Duvalle as per act before Phillippe Pedesclaux, N.P., on August 26, 1819, and the other to Mrs. Marie M. Duvalle by act before the same notary on August 26, 1819, and extending thence between parallel lines five arpents to Bayou Perot, a distance of six miles, more or less, and being bounded on the north, east and south by lands formerly belonging to Jonathan Davis, later to J. T. Oriard and now to N. Rosenberger, et al., or assigns, and on the west by Bayou Perot. All costs of this *769 proceeding up to the time of the disclaimers filed respectively on behalf of the Brians and Edwin P. Brady to be paid jointly by Edgar H. Powell, Alexis Brian, the heirs of A. Morgan Brian, and Edwin P. Brady; and thereafter, beginning with the intervention of John C. Hollingsworth, to be paid by his successors Mrs. Maude Snyder Hollingsworth and Mrs. Shirley Hollingsworth Keith, and Edgar H. Powell.

. The action is one to establish title under the provisions of Act 38 of 1908 (incorporated in the LSA-Revised Statutes of 1950 as LSA-R.S. 13:5062), none of the parties being in possession.

. Namely: Marie Louise Hyacinthe, Antoine Hilaire, Modeste, D. Louis Hilaire, Juan Leon, Celestine, and Jean Baptiste (born in 1792, the namesake of an uncle who figures prominently in the case).

. At the time there were only two defendants left, Powell and Brady; the latter filed his disclaimer on September 7, 1948. although he had not participated in the later phases of the trial on the merits.

.Hubert M. Ansley, counsel initially employed- by the plaintiffs, who was responsible for Hollingsworth’s association in the case, Withdrew as counsel on April 22, 1947,- some days after Hollingsworth filed his intervention and third opposition, stating that he had lately become aware that Ms connection in the instant suit was in conflict with his activities as counsel in' the Succession of Jean Baptiste Boutté.

. During tlie pendency of the appeal, Hollingsworth died; Mrs. Maude Snyder, surviving widow in community, and Mrs. Shirley Hollingsworth Keith, his sole heir, were made parties.

. The brothers and sisters of Philippe Boutté were Francois Thisapherne, Azalie, Stephanie Hermoine, and Godefroy.

. See LSA-Civil Code of Louisiana, Articles 892, 897.

. Pursuant thereto a rule issued ordering the co-administrators to show cause why their appointment should not be set aside and their office vacated, but upon application to this Court by Baudier and Main, alternative writs issued prohibiting the trial of the rule, and on December 1, 1941, we held that the administrators could not be removed by summary proceedings. See Succession of Boutté (In re Baudier), 199 La. 182, 5 So.2d 543.

. This was “in consideration of their services rendered to the plaintiffs under contract made with them by the Jean Baptiste Boutté Corporation, and by the individual members thereof, and also in consideration of the benefits accruing by their work to other members of the Family not employing them, but for whom they acted as Negotiorem Gestors, * * *."

. When this case was argued, successors to the intervenor were not represented in court either by counsel or by brief. However, with leave of this Court, upon the representation by their attorney that he was not served with-copy of brief of the appellants and did not know that the case had been set for trial on that date, he was allowed to file a brief.

.A perusal of that brief reveals that counsel were laboring under several incorrect premises, resulting in (1) the assertion that because of failure to comply with certain acts of Congress concerning land claims in Louisiana (among others, the Act of May 11, 1820, Chapter 87, quoted in part in the text) plaintiffs are forever barred from asserting *765 their claim; and (2) the statement that persons claiming public lands are considered to have abandoned the claim when not asserting it within a reasonable time; and reference to the several eases cited will show that they are not applicable from either a factual or a legal standpoint.

. United States v. Percheman, 7 Pet. 51, 32 U.S. 51, 8 L.Ed. 604; Langdeau v. Hanes, 21 Wall. 521, 88 U.S. 521, 22 L.Ed. 606; Ryan v. Carter, 93 U.S. 78, 23 L.Ed. 807; Louis v. Giroir, 40 La.Ann. 710, 4 So. 878; Breaux v. Lefort, 209 La. 506, 24 So.2d 879; Gonsoulin’s Heirs v. Gulf Co., 5 Cir., 116 E. 251.