CHRIS T. BARNETTE, Judge pro tem.
This proceeding is a sequel to Dugas v. Powell, 228 La. 748, 84 So.2d 177 (1955). That case finally decided by the Supreme Court, November 7, 1955 (rehearing denied December 12, 1955), after nearly 20 years of litigation, recognized the heirs of Francois Zenon Boutte to be the owners of a certain tract of land, comprising approximately 400 acres in Jefferson Parish on Barataría Island. The heirs, so recognized, were the collateral descendants of Francois Zenon Boutte and numbered more than a thousand.
From 1955 until the instant proceeding was filed, the attorneys who had represented the Boutte heirs to a successful conclusion of their title litigation apparently took no further steps in their behalf. Other persons, however, some of whom are in-tervenors herein, busied themselves in locating and obtaining contracts and powers of attorney from the numerous collateral descendants of Francois Zenon Boutte to assist them in establishing their rights of inheritance and to assist in obtaining development of the property through mineral leases.
In 1952, Act 513 (LSA-R.S. 30:181-30:188) was enacted by the State Legislature for the purpose of making possible a valid mineral lease in a situation such as this. The events leading to the passage of Act 513 of 1952 are fully discussed in Louisiana State Mineral Board v. Abadie, 164 So.2d 159 (La.App. 1st Cir. 1964). Some of the parties involved in that case are also involved in the instant case.
Act 513 of 1952 was repealed in part and amended by Act 358 of 1960. The lease with which we are concerned was executed before passage of the 1960 Act. The later act affects the method of distribution of funds. Act 513 of 1952 provided in substance that when 500 or more persons own property in indivisión, upon petition of 50 or more of them the State Mineral Board shall advertise the property for lease for mineral development in the same manner and according to the procedure required for lease of state-owned land.
Pursuant to the provisions of this act, the Mineral Board, on February 24, 1960, granted an oil, gas and mineral lease covering said property to the California Company. By the terms of the lease a bonus of $103,753.67 was received for the benefit of the Boutte heirs. Since then some additional payments have been received as royalty or interest.
The State Mineral Board refused to deposit the money held by it for distribution among the heirs as provided by Act 513 of 1952 until ordered to do so by the court. Its refusal was based upon its interpretation of Act 358 of 1960. Thereupon Charles C. Jaubert, attorney at law, claiming representation by contract of 151 Boutte heirs, brought a mandamus proceeding against the State Mineral Board in the Nineteenth *8 Judicial District Court to compel the Board to deposit in the registry of the Twenty-fourth Judicial Court for the Parish of Jefferson the money it held for the Boutte heirs and invoke a concursus proceeding pursuant to Act 513 of 1952 as amended by Act 358 of 1960. Mandamus was granted as prayed for and affirmed on appeal. State ex rel. Goudeau v. State Mineral Board, 141 So.2d 32 (La.App. 1st Cir. 1962). Thereupon the Louisiana State Mineral Board brought this concursus proceeding and deposited in the registry of the court $106,150.57, being the amount due the Boutte heirs after deducting the fees due the Board under the statute. Appellants-intervenors have appealed from the judgment of the District Court rejecting their interventions and rejecting their rights respectively to participate in said funds, but reserving to them their rights "under any existing assignment of interest, power of attorney, or attorney-client contract.”
We cannot commend too highly the able judge of the trial court for the thorough and painstaking manner in which he undertook to determine the collateral heirs of Francois Zerion Boutte, who had been dead a hundred years. It is interesting to note that when Dugas v. Powell, supra, was before the Supreme Court there were some 1079 listed heirs. In this proceeding below, some 3500 persons claimed to be collateral descendants of Francois Zenon Boutte. The judgment below recognized 1830 heirs and computed their respective interests in the estate to extremely minute proportions. The trial record is voluminous and confused with numerous pleadings and conflicting claims.
Some of these interests, computed on the basis of $100,000.00, are as little as 11 cents and relatively few exceed $100.00. The unusual nature of this proceeding and the practical aspects being considered, many ordinary rules of trial and procedure were relaxed of necessity, and as intended by Act 358 of 1960 (LSA-R.S. 30:187), to the end that a just and practical conclusion could be reached. We find no error in the manner in which the trial below was conducted.
There is no appeal from that portion of the judgment which recognizes the 1830 heirs of Francois Zenon Boutte and fixes the proportionate interest of each in the estate, of which the mineral rights, making possible the above fund on deposit in the registry of the court, are the principal asset.
We have before us for consideration only the claims of the intervenors who have appealed or answered the appeal.
The intervenors, who claim an interest and right to share in the fund on account of various alleged contracts, powers of attorney, and assignments as fees and compensation for services rendered, and the substance of their claims are as follows:
1. Ulysses Pierrottie, claiming under contract and quasi contract for alleged services rendered to the estate of Francois Boutte from 1938 to date of trial. He claims $47,178.64 for expenses and services rendered in locating the Boutte heirs in many states and assisting them in bringing to a successful conclusion their litigation, which he alleges made the present fund possible. In his brief his claim is modified to 10 percent of the fund, plus $10,000.00 for expenses.
2. Felix Pierrottie intervened for $4,-000.00 on the same basis as Ulysses Pierrottie. No appeal was perfected in his behalf, and the judgment below rejecting his claim is final.
3. A. H. Reed (Heirs of); E. Leland Richardson and Jack Voyles, attorneys, claiming 3354 percent of the total fund as attorneys’ fees. Their claim is based on an alleged contract with a committee purporting to represent all the Boutte heirs for the original litigation (Dugas v. Powell, supra).
*9 4. D. L. Martel, claiming one-fourtli of the above 33}/$ percent under an alleged contract as his share for providing the funds necessary to finance the litigation and other expenses incurred in Dugas v. Powell, supra.
5. Antoine J. Vigneaux, as heir of his deceased father, Ernest J. Vigneaux, claiming 6^/3 percent of the total fund for services rendered by Ernest J. Vigneaux under an alleged contract. The services rendered being in preparing the family tree and generally assisting the attorneys in establishing the identity of the Boutte heirs.
6. Alvin A. Cobb, claiming under alleged powers of attorney an assignment of 30 percent of the funds from 968 heirs. Pie also claims from all the heirs of Francois Zenon Boutte, other than the 968, a percentage based on quantum meruit for services allegedly performed inuring to the benefit of all the heirs. The services allegedly rendered consisted of establishing and preserving the rights of the Boutte heirs over many years, employment of a genealogist, a surveyor, and attorneys; and the expenditure of large sums of money and much time and effort to establish and protect their rights. Pie did not appeal but did answer the appeal timely.
7. F. C. Gandolfo, Jr., claiming $5,500.-00 for a survey of the Boutte property in 1959, under contract with Alvin A. Cobb.
8. Charles C. Jaubert, attorney, claiming under alleged contract of employment and assignment by 151 heirs, 20 percent of the funds allotted to said 151 heirs. He prayed that said amount be deducted from the portions due said heirs and paid directly to him. As to all funds allotted to the interests of these 151 heirs from and after April 15, 1961, he claims 30 percent. This intervenor is not properly before this Court in his individual capacity. Apparently the judgment below did not dispose of his intervention and he did not appeal. Plis answer to the appeal was filed in this Court on May 14, 1964. The appeal was lodged here on the return date, April 22, 1964. Therefore, his answer to the appeal was not timely. L.S.A.-C.C.P. art. 2133.
We think the first and most important question to be decided is whether the “fund doctrine” should be applied and made available to the intervenors or any of them.
The so-called “fund doctrine” based on the application of the equitable principles of unjust enrichment and quantum meruit was accepted and cautiously applied by our Supreme Court in In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958). After first rejecting the doctrine, on rehearing the Court said at p. 280 of 106 So.2d:
“The principal ground on which our decision on original hearing was based was that in Louisiana 'the right of an attorney to remuneration for his professional services depends on a contract, either express or implied’. This is undoubtedly a correct and well recognized principle of law, but there are certain exceptions to this legal principle, and we have reached the conclusion, for reasons which will hereafter be apparent, that the facts of the instant case bring it under one of those exceptions.
“This court on original hearing discussed the doctrine that where one litigant has borne the burden and expense of litigation that has inured to the benefit of others as well as to himself, those who have shared in the benefits should contribute to the expense. The court there stated that, even if it were conceded that this doctrine is recognized in this state, these attorneys have *10 not brought themselves within its scope.
“The doctrine which the court was there discussing is stated in 49 A.L.R. 1150 thus:
“ ‘The rule is that a court of equity, or a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.’ ”
After reviewing the jurisprudence of this state and considering the application of the doctrine by the United States Supreme Court and other Federal Courts (citing cases), the Court concluded in In re Interstate Trust & Banking Company, supra, at p. 282:
“Due solely to the efforts and industry of these attorneys * * * a fund * * * was created and brought into existence, and except for their services none of the depositors would have received any interest on any of their frozen deposits. Consequently all depositors as a class benefited and were enriched by these attorneys’ efforts. There can be no dispute as to this fact or as to the fact that these attorneys here are seeking attorneys’ fees to be paid out of the very fund which their efforts created.”
The Court then held that the attorneys had brought themselves within the scope of the doctrine.
More recently the fund doctrine was applied in favor of an attorney in Louisiana State Mineral Board v. Abadie, supra. A careful analysis of the opinion in that case shows that the Court was very emphatic that there would have been no lease; that there would have been no fund; that the land held in common by the Gonsoulin heirs might have remained in their undivided ownership “ad infinitum and the fund in question would not and indeed could not have accrued, existed or come into being until and unless the property were leased for mineral development.” The Court said at p. 167 of 164 So.2d: “It is clear beyond doubt the fund in question exists because it was made possible by Act 513 of 1952.” The Court gave full credit to the attorney through whose efforts, tenacity and professional skill alone the act was passed to make the fund possible and said at p. 168:
“ * * * We do believe, and so hold, that the test to be applied in such instances is whether or not the attorney alone and unaided performed the legal services necessary to create, preserve, protect or increase the fund.”
Applying the test set out in the Interstate case and as interpreted in the Abadie case, it is our opinion that none of the intervenors in the instant case can qualify for the application of the fund doctrine. Accordingly we hold that none of them have shown a cause or right of action against the common fund.
We concur in the opinion expressed by the able trial judge in his “Findings of Fact and Conclusions in Connection with Judgment” regarding some of the inter-venors and in particular, in regard to the attorneys, Reed, Richardson, and Voyles, wherein he said:
“Unquestionably, these attorneys rendered valuable service to all of the heirs of this estate. On three occasions, during the long period of litigating the Dugas case, these inter-venors lodged appeals to the Supreme Court and successfully had judgments adverse to interest of the estate reversed by the Appellate Court. They *11 were instrumental and directly responsible, on the third appeal, in having the Supreme Court decree that the Estate of Francois Zenon Boutte was the owner of the property, which subsequently became the subject of the present mineral lease. It was through their professional efforts that the heirs of Francois Zenon Boutte are able to share in the funds now on deposit in the Registry of this Court.”
At this point we must agree with the Court in the Abadie case wherein it said at p. 167 of 164 So.2d:
“ * * * Establishment of title of the Gonsoulin [Boutte] heirs merely recognized their respective pro rata interests which existed in them because of their relationship to an ancestor or ancestors who previously held title to the lands in question. Such right of ownership did not produce the fund presently available for distribution. * * * ”
We also concur in the following statement of the trial judge:
“It is conceded that these Interve-nors [Ulysses Pierottie, Felix Pierottie, and Alvin A. Cobb] may, with justification, claim that their efforts were the primary impetus which ultimately caused the estate of Francois Zenon Boutte to be recognized as the owner of the property; however, they were motivated by the compensation to be paid them, as stipulated in their Power of Attorney Contracts. There has been presented no evidence to sustain the conclusion that these agents ever acted other than in their fiduciary capacity, nor does the record reflect any action taken by them to assist all of the heirs in having their rights of inheritance recognized.
“It is indeed difficult, if not impossible, to draw the distinction between the services rendered by the agents in fulfillment of their contractual obligations, as opposed to those exerted solely to assist all of the heirs, without regard being had for any existing contract. This is particularly true when the protracted period of thirty years litigation, involving 2000 heirs, is taken into consideration, as exists in the instant case. A mere indirect or incideñtal benefit to a third person attributable to the fulfillment of a contract, to which he is not a party and has not knowingly accepted or ratified, is insufficient to render him legally responsible for its value. The Court, therefore, concludes that these intervenors have failed to sustain the burden of proof required to invoke the application of the unjust enrichment doctrine, and their claims are rejected.”
Authority to support the foregoing conclusion is found in Louisiana State Mineral Board v. Abadie, supra, wherein the Court said at p. 166 of 164 So.2d:
“Generally the right of an attorney to remuneration for services is dependent upon a contract, either express or implied. Succession of Kernan, 105 La. 592, 30 So. 239; Succession of DeWitt, La.App., 119 So.2d 669.
“However valuable the services of an attorney may be to a party in a suit in which the attorney represented others having a similar interest, he cannot recover a fee from the party who has neither employed nor authorized another to employ him. Michon v. Gravier, 11 La.Ann. 596; Succession of Kernan, supra; Succession of De Witt, supra; Succession of Guichard, 225 La. 315, 72 So.2d 744.”
The Court did make an exception of the foregoing rule in the Abadie case because of the unusual facts presented. The facts in this case do not justify a departure from the general rule.
The court below did not try the issue of validity of the numerous (more than a thousand) purported contracts, powers of *12 attorney and assignments upon which in-tervenors base their claims. There are numerous contracts in the record which appear to be in improper form or improperly signed. Many of them are under private signature, and the court below commented that many of them are disputed and no evidence was taken to establish their enforceability. While the trial court expressly reserved to each intervenor all rights under said contracts, the judgment at the same time rejected their demands, thus having the effect of closing this concursus proceeding to them.
This interpretation seems logical, but we hardly think tire trial court meant to do this as to all intervenors. To remove any doubt of our intention, we will attempt to state our opinion clearly.
While we have held that the in-tervenors cannot invoke the application of the fund doctrine, and hence have no right of action against the common fund, we recognize the right of those who hold contracts of assignment of an interest in the land or to a portion of the pi'o rata of the fund allocated to the heirs respectively who have executed such assignments. To this extent tire intervenors who meet this qualification have a right to participate in this concursus proceeding. An assignment by an heir of a portion of his share in the estate, or fund, entitles the assignee to participate in the division of the estate, or fund, to that extent. But a claimant who holds a contract or power of attorney containing an obligation for payment for services rendered, short of an assignment of an interest in the property or in the fund, is relegated to the ordinary process for enforcement of his contract. Dixie Homestead Ass’n v. Redden, 210 La. 789, 28 So.2d 271 (1946); Madison v. Sun Life Assur. Co. of Canada, 191 So. 336 (La.App. Orleans 1939); In re Employers’ Liability Assur. Corporation, 180 La. 406, 156 So. 447 (1934). See also Dixie Homestead Ass’n v. Redden, 21 So.2d 194 (La.App. Orleans 1945), set aside by the Supreme Court on a point of fact.
Intervenor Charles C. Jaubert is not properly before us on appeal for the reason above stated. We find it necessary, however, to comment on his position in the case. He did render significant service, from which all the heirs have benefited, by bringing the mandamus action against the Mineral Board resulting in the deposit of the fund in the registry of the court for concursus. He did not create the fund, nor bring it into existence. It might have remained in indivisión in the hands of the Mineral Board indefinitely without loss to the heirs. For the reasons above stated he cannot invoke the fund doctrine, notwithstanding that all the heirs have benefited indirectly by his successful action.
In the trial judge’s “Findings of Fact and Conclusions in Connection with Judgment” he said:
“Mr. Charles Jaubert requested of the Court that his right to the attorney fees stipulated in his employment contracts with certain heirs, copies of which were filed in the record, be recognized and paid to him out of the share due to his clients. The Court pretermitted passing upon this request.”
The judgment, after recognizing the 1830 heirs in their respective proportions, continues as follows:
“IT IS FURTHER ORDERED by the Court that the interventions filed on behalf of ULYSEES PIRROTTI (PIERROTTIE), FELIX PIRROTTI (PIERROTTIE), F. C. GANDOLFO, JR., A. H. REED, E. LELAND RICHARDSON, JACK VOYLES, D. L. MARTEL, ANTOINE JOSEPH VIG-NEAUX, and ALVIN A. COBB be, and the same are hereby rejected.
“IT IS FURTHER ORDERED by the Court that all claims of ownership or right to participate in and to said funds, which have not been specifically *13 recognized and so recited in this Judgment, are hereby rejected.
“IT IS FURTHER ORDERED by the Court that this Judgment shall in no wise or manner affect or impair the rights of the parties thereto under any existing assignment of interest, power of attorney, or attorney-client contract. The rights and obligations resulting from these private instruments are reserved to the contracting parties in whose favor they enure.”
The foregoing rejection of claims of the intervenors, with the exclusion of Mr. Jaubert from those named, when read in connection with his specific pretermission of Mr. Jaubert’s personal claim in his “Findings of Fact and Conclusions in Connection with the Judgment,” cannot be construed as a judgment rejecting or otherwise disposing of Jaubert’s intervention. The second above-quoted paragraph of the judgment obviously refers to the 1700, more or less, claimants to participation as heirs in the Boutte estate who were rejected. The Jaubert intervention is still pending adjudication in the trial court and is not before us on appeal. Authority for this procedure is found in LSA-C.C.P. art. 1915.
Pleas of prescription were filed on behalf of numerous heirs against the intervention of the A. H. Reed heirs, E. Leland Richardson, and Jack Voyles. As noted by the trial judge these attorneys rendered valuable service from which all the heirs of this estate have benefited, but for the reasons above given, they cannot be brought within the application of the fund doctrine.
We concur in the opinion of the trial judge that the attorneys, A. H. Reed (represented herein by his heirs), E. Leland Richardson, and Jack Voyles (and especially A. H. Reed), rendered a valuable service in establishing the ownership of the land in the estate of Francois Zenon Boutte and that this service inured to the benefit of all the heirs. It is regrettable that they failed from December 12, 1955, to January 14, 1963, to assert their claim for attorneys’ fees or take any action to interrupt prescription. LSA-C.C. art. 3538. In the trial judge’s “Findings of Fact and Conclusions in Connection with Judgment” he said: “It is indeed with reluctance that the Court is compelled to conclude that the claims of intervenors [Reed heirs, Richardson, and Voyles] have prescribed and no longer may be enforced.” In the judgment (above quoted in part) they are named specifically among the intervenors whose interventions were rejected. From the trial court’s statement that their claims had prescribed, we assume the judgment of rejection is based on prescription. If this assumption is correct, we cannot concur in that part of the judgment.
Apparently the trial court was of the opinion that except for their claim having prescribed these intervenors could have invoked the fund doctrine. For the reasons above given, we are of a different opinion. Therefore, for this reason, there was no need to pass on the pleas of prescription to reject these intervenors’ claims under contract or implied contract to a share of the total fund.
In the second place the defense of prescription is a personal plea and must be specifically pleaded by each heir in whose favor it applies. It may be pleaded for or on behalf of an heir by one authorized to do so, such as an attorney.
We have not attempted, indeed it would be impossible to determine from the record before us, exactly which heirs, personally or through attorneys, have pleaded prescription. It is obvious that some of them have not. Furthermore, in his capacity as agent and attorney in fact, Alvin A. Cobb, an intervenor, has pleaded or attempted to plead prescription for some 968 heirs alleged to have, by their powers of attorney, clothed him with authority to do so in their behalf. His powers of attorney *14 from many of them have been challenged. Others unrepresented by counsel have not pleaded prescription. Therefore, to totally reject the claims of the attorneys, Reed, Richardson, and Voyles, on the basis of prescription was error and should be reversed without prejudice to those who have pleaded prescription. We discuss the claims of these intervenors more fully below.
Intervenor F. C. Gandolfo, Jr., bases his claim upon an alleged verbal contract with Alvin A. Cobb for payment of $5,500.00 for a survey. Whether or not Cobb acted individually or as agent and attorney in fact for 968 heirs is unimportant. At most the alleged obligation is due for the payment of a sum for services rendered and is not an assignment of an interest in the land or fund to entitle Gan-dolfo to a right of participation in this con-cursus proceeding. The judgment below rejecting his intervention but reserving to him any right he may have under private contract with Alvin A. Cobb is correct and must be affirmed.
Intervenor Ulysses Pierrottie’s claim is based upon an alleged obligation to pay for services rendered over many years. He asks $47,178.64 which he attempts to justify by his testimony and a lengthy statement of expenses and services rendered. He seeks recovery in contract or quasi contract on quantum meruit. He did not allege nor offer proof of an assignment of interest in the land or fund on deposit.
We have searched the record in vain to find some evidence or clue to prove an assignment of a portion of the fund to Mr. Pierrottie. His petition of intervention (Vol. I, p. 104 of the record), in which he makes claim in a capacity other than his capacity as an heir, recites in brief the nature of the services rendered for the Boutte estate and concludes with a prayer for a judgment of $47,178.64 for himself and $4,-000.00 for Felix Pierrottie in addition to their share as heirs. There is no allegation of contract or assignment of interest.
On trial below Mr. Pierrottie filed in evidence two instruments identified as P-1 (Vol. II, p. 439) and P-3 (Vol. Ill, p. 537), P-1 being a supplement to P-3 executed at a later date and refers to P-3 executed November 10, 1938. These instruments purporting to have been signed by numerous heirs are nothing more than powers of attorney, empowering him (and Felix Pier-rottie to institute suits and in general do all things necessary to recover the property, to grant mineral leases, etc. Neither of these instruments recites any consideration for the services rendered, nor do they purport to make any assignment of interest to either Ulysses or Felix Pierrottie. The instrument identified as P-3 executed November 10, 1938, contains the following paragraph which is of significance as we shall point out below:
“IT IS UNDERSTOOD, that a contract al-ready exists employing attorneys for the prosecution of this estate; that said attorneys, al-ready holds a contract of 33j/3% of whatsoever amount they recover; that there exists another contract of 62/z% for the real estate firm who gathered up the family tree; and that, therefore, the authorization given by this document to our attorneys ULYSSES PIER-ROTTI AND FELIX PIERROTTI, to hire counsel and to pay 10% on a contingent base of the amount of the property recovered, means 10% of the whole, before the 40% al-ready contracted, before the existance of this document, is removed from the whole amount recovered in said succession.”
Furthermore, in brief filed in behalf of appellant Pierrottie in this Court he makes no claim of an assignment but says:
“The testimony of Ulysses Pierrottie (R-734) justifies a recovery either in contract or quasi contract (negotorium [sic] gest io, quantum meruit, or the 'fund doctrine’), or both. * * * ”
His contention is based upon contract and he refers particularly to P-3, but his argu *15 ment is essentially a plea for payment on quantum meruit.
Pursuant to a directive of the trial judge, Mr. Pierrottie’s attorneys sent a mineo-graphed inquiry to the persons purporting to have signed the power of attorney to Mr. Pierrottie to verify signatures. That inquiry contains the following:
“Messrs. Ulysses and Felix Pierrotti have made a claim for compensation for services rendered to the Estate of Zenon Francois Boutte. as well as to the specific heirs who signed their power of attorney.
“The power of attorney identified as Exhibit P-1 authorizes Messrs. Pier-rotti to administer the property in certain specific and general ways, and specifically states that Messrs. Pier-rotti are entitled to compensation, but does not fix any amount. The Court now wants to fix the amount, based on the Court’s appreciation of the value ■of the services rendered through the years.” (Emphasis added.)
Obviously Mr. Pierrottie has not alleged nor does he claim to hold an assignment of interest in the land or the fund and has not shown a right to participate as an intervenor in the concursus proceeding. The judgment rejecting his intervention but reserving his rights under private contract or power of attorney is correct and must be affirmed.
Intervenors A. H. Reed, E. Leland Richardson, and Jack Voyles have made claim for payment of attorneys’ fees. The initial intervention by A. H. Reed claimed •employment by the plaintiffs (the Francois Z. Boutte heirs) in Dugas v. Powell, supra, .and alleged contract, “express or implied,” which entitled him to an attorney’s fee in .a “sum equal to one-third” or in the alternative a reasonable fee. By supplemental petition, attorneys E. Leland Richardson and Jack Voyles were joined as co-intervenors with him and pray for a just proportion of the fee in the amount to he fixed by the court commensurate with services rendered. They claim no assignment of interest which would entitle them to participate in this concursus proceeding except such as might have been made to A. H. Reed with whom they became associated as co-counsel.
The above-quoted paragraph from Mr. Pierrottie’s power of attorney, filed in evidence as P-3, clearly indicates that the original attorneys who began the litigation in Dugas v. Powell, supra, had a contract which might have contained an assignment of interest. The attorneys referred to in P-3 (November 10, 1938) on November 14, 1938, employed attorney A. H. Reed to assist them as co-counsel. Shortly thereafter the following letter was written confirming this agreement:
“New Orleans, Louisiana
July 11th, 1939
“Mr. A. H. Reed,
Attorney-at-Law
Maison Blanche Building,
New Orleans, Louisiana.
Dear Mr. Reed:
“In consideration of your promise to assist us in every way possible to bring the case styled Dugas, et als, vs. Powell, et ais, No. 13075 of the District Court of Jefferson Parish, Louisiana, to trial both upon the exceptions and the merits as soon as possible, and look after the setting of said cause both upon its exceptions and merits, we the undersigned, S. C. Mal-lott, attorney of Baytown, Harris County, Texas, one of the attorneys of record for plaintiffs in said cause, who has an undivided one-fottrth Q4) interest in and to thirty three and one-thirds (33Vz%) per cent of all recovered by said attorney and his associates, and D. L. Martel, of Port Arthur, Jefferson County, Texas, who likewise has an undivided one-fourth (j4) interest in said attorney fees for financing said cause, we hereby give, sell *16 transfer and convey and by these presents do hereby sell, deliver transfer and convey to you, A. H. Reed, an undivided two and one-half (254%) per cent in and to all that each of us, the undersigned, shall recover by virtue of our undivided 54 interest, each, in 3354'% of said above mentioned attorney fees.
“It is understood that Mr. Reed will, in consideration of this attorney fee, to take care of all details in reference to the setting, both upon the exceptions and merits of this cause, and that upon the trial thereof, that he will assist S. C. Mallott, leading counsel thereof, in presenting plaintiffs evidence before said Court.
“Given under our hands at New Orleans, Orleans Parish, Louisiana, this 11th day of July, A. D., 1939.
[Signed] S. C. Mallott
[Signed] D. L. Martel
“Read and accepted this 11th day of July, A. D. 1939, at the City of New Orleans, Parish of Orleans, State of Louisiana.
[Signed] A. H. Reed”
Sometime thereafter the original attorneys either withdrew, changed sides, or lost interest in the litigation, but Mr. Reed continued almost single-handedly until he associated Richardson and Voyles as co-counsel and pursued the case to a successful conclusion.
The following instrument appearing on page 589 of Vol. Ill is significant:
“I, Jack Voyles, the attorney named in the Contract of Employment relative to the prosecution and recovery or settlement of that certain claim and cause of action concerning the following described property situated in the Parish of Jefferson, State of Louisiana:
[Description omitted.]
hereby agree to convey unto E. J. Vigneaux six and two-thirds per cent (6^4%) interest in and to any land, including minerals, cash, timber or other emoluments that may be recovered in that certain suit styled 'Dugas, et al vs. Powell, et al’ bearing number 13,-075 on the docket of the District Court in and for the Parish of Jefferson, State of Louisiana, and I further agree that the remaining thirty-three and a third per cent (3354%) interest owned by me will be divided equally between the following: D. L. Martel E. Leland Richardson, H. A. Reed and myself, and I agree to make these assignments immediately upon the completion of the above styled and numbered cause.
“IN TESTIMONY WHEREOF, I have hereunto set my hand this the 22nd day of December, 1952.
[Signed] Jack Voyles Jack Voyles”
On page 145 of Vol. I, attached to the petition of intervention of D. L. Martel, is an instrument dated July 26, 1938, signed by the original attorneys agreeing “to allow [Martel] an equal one-fourth (54) of all attorneys fees recovered * * * ” in consideration of Martel’s financing the litigation in Dugas v. Powell, supra. This instrument is also filed in the record at page 591 of Vol. III.
All these instruments read together and considered in connection with the testimony in the trial court indicate that in the early stages of the litigation, the original attorneys had some kind of contract which might have purported to assign an interest in the property. None of the original attorneys have appeared herein.. The Reed group has failed to prove any such contract or assignment and, having thus failed, their agreement with the original attorneys and among themselves is insufficient to support a claim by assignment in the land or fund.
We quote with approval a portion of the trial judge’s findings of fact in refer *17 ence to Mr. Vigneaux, but which is equally applicable to all intervenors who claim through the same contracts:
“In support of his claim, Vigneaux introduced a photostatic copy of an agreement [from Jack Voyles, see above] to convey an undivided interest by assignment, which became execu-tory upon the completion of the Dugas case. Although the Dugas v. Powell suit was finally adjudicated by the Supreme Court on December 12th, 1955, it must be presumed that the intended assignment was never executed, since it was not produced or filed in evidence.
“The document filed by intervenor reflects that Mr. Vigneaux was to receive &/i% of the estate out of the 40% interest to be acquired by Mr. Voyles, as attorney fees. Such an agreement presupposes the existence of a contract betzveen Voyles and all of the heirs of Boutte, yet no such contract was presented to the Court/’ (Emphasis added.)
Intervenor D. L. Martel claims under a written contract with the attorneys (without naming them) of the heirs of Francois Z. Boutte “who had and held an assignment from said heirs equal to one-third (J/3) of all lands, moneys, minerals * He claims an assignment to him by them, the attorneys, to one-fourth of their one-third of everything recovered in consideration for his financing the litigation in Dugas v. Powell, supra. Mr. Martel is mentioned in the foregoing instruments and to the extent that the original attorneys did agree with him as he alleged, these instruments verify his allegations. However, for the reasons above stated, they are not sufficient to sustain his intervention.
Therefore, intervenor Martel, having offered no proof of an assignment of interest in the land or the fund, the judgment rejecting his intervention with reservation of rights under his private contract is correct and must be affirmed.
Intervenor A. J. Vigneaux, representing Ernest J. Vigneaux, also based his claim to an interest in the fund on the agreements discussed above. For the reasons above given, the judgment rejecting his intervention was correct and must be affirmed with reservation of rights under private contract.
Intervenor Alvin A. Cobb claims 30 percent of that portion of the fund on deposit which has been allocated to an alleged 968 heirs from whom he claim powers of attorney and contracts of assignment of interest. He claims against all the remaining heirs compensation for services rendered for their benefit on quantum meruit. For the reasons above stated he cannot invoke the fund doctrine and cannot recover from any heir from whom he has no specific contract.
As pointed out above, Mr. Cobb did not appeal but answered the appeal taken by other intervenors. The judgment below recognized 1830 heirs entitled to share in the Boutte estate in the respective proportions opposite each name. These heirs have not appealed. If this were an ordinary suit in which Cobb’s claim was directed against these heirs, he could not now bring them into this Court on appeal by answer to the appeal of the other intervenors[1] but this is not such a proceeding. It is our opinion that this is a proceeding in which theoretically all parties are both plaintiff and defendant as their claims might conflict. In reality neither of them makes demand of the other, but makes claim to a portion (in effect against) the fund. The fund has been brought before this Court by the timely appeal of some of the intervenors. It is our opinion that by answer to their appeal Cobb *18 is properly before this Court for a review' of the judgment rejecting his claim to a portion of the fund before us.
It is evident that numerous heirs have contracted with Mr. Cobb and did assign to him 30 percent,of all their interest in the estate, including this fund. How many and precisely who they are, we cannot determine from the record before us.
Brought up with the record are several large volumes purporting to contain Mr. Cobb’s contracts. They have not been identified nor otherwise proven. Many of them are challenged and many appear to refer to the Jean Baptiste Boutte estate.
It appears, therefore, that Mr. Cobb is entitled to participate in this con-cursus proceeding under the contracts of assignment which purport to entitle him to a share of the fund, and the judgment rejecting his intervention is in error.
The intervention of Charles C. Jaubert, which was not adjudged and is not before us on appeal, and which is still pending in the District Court, is based upon an assignment by an alleged 151 heirs of 20 percent of their interest in the fund accruing before April 15, 1961, and 30 percent thereafter. He should be given an opportunity to establish his claim in the trial court
It is our opinion that upon proper proof, identification, and verification of the contracts of assignment under which inter-venors Charles C. Jaubert and Alvin A. Cobb respectively claim a share of the fund on deposit that judgment should be entered in their favor accordingly in this concursus proceeding. Further it is our opinion that said judgment should direct the custodian of the fund in the registry of the court to make payment to them direct of the aggregate amount due each of them respectively of the sums withheld from the shares allocated to the heirs so obligated to them.
The judgment appealed from rejecting the intervention of Alvin A. Cobb is reversed and set aside and the case remanded for further proceedings on said intervention in accordance with the views herein expressed. The judgment rejecting the interventions of Ulysses Pierrotti (Pierrottie), F. C. Gandolfo, Jr., A. H. Reed (or his heirs), E. Leland Richardson, Jack Voyles, D. L. Martel, and Antoine Joseph Vigneaux are affirmed with express reservation to them of all rights under contracts of employment or powers of attorney. The judgment appealed from having not adjudicated the intervention of Charles C. Jaubert his rights thereunder are reserved without prejudice subject to further proceeding in accordance with the views herein expressed.
In all other respects the judgment appealed from is affirmed; costs of this appeal to be paid by all appellants except Alvin A. Cobb.
Affirmed in part; reversed in part; and remanded.

. Lanza v. Metcalf, 25 So.2d 453 (La.App.2d Cir. 1946); Boutte & Courrege v. Derokay, 168 So. 39 (La.App.1st Cir. 1936).